**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

ROBERT M. MATTOX,                    :

    Plaintiff,                          :

vs.                                  :          CA 12-0192- KD-C

STATE FARM FIRE AND                  :
CASUALTY COMPANY and
JEFF STAUTER,                        :

    Defendants.


## REPORT AND RECOMMENDATION

This cause is before the Magistrate Judge for issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b), on the notice of removal (Doc. 1; *see also* Doc. 3 (Stauter's joinder in notice of removal)), Plaintiff's motion to remand (Doc. 9), Defendant Jeff Stauter's motion to dismiss (Doc. 11; *see also* Doc. 14 (supplement to motion to dismiss which joins in State Farm's opposition)), State Farm Fire and Casualty Company's opposition to remand (Doc. 13), and Plaintiff's reply to State Farm's response to motion to remand (Doc. 15). Upon consideration of the foregoing pleadings, it is recommended that the Court **GRANT** plaintiff's motion to remand (Doc. 9) and **REMAND** this cause to the Circuit Court of Baldwin County, Alabama from whence it came.

## FINDINGS OF FACT

State Farm Fire and Casualty Company renewed a rental dwelling policy, Policy Number 93-E1-7930-6, for the Plaintiff, Robert M. Mattox ("Mattox"), on July 9, 2008, covering his rental home and personal property at 10 Rolling Oaks Drive, Fairhope, Alabama, 36532. (Doc. 1, Exhibit A, RENEWAL CERTIFICATE.) The policy had an effective date of July 9, 2008 and provided coverage through July 9, 2009. (*Id*.) The rental dwelling policy reflects dwelling coverage of $310,900, dwelling extension coverage of $31,090, and personal property coverage of $15,545. (*Id*.) The policy also covers actual loss resulting from loss of rents. (*Id*.) Finally, the policy provides additional debris removal coverage and includes such expense in the limit of liability applying to the damaged property. (*See id.,* **ADDITIONAL COVERAGES,** at ¶ 1.) "When the amount payable for the actual damage to the property plus the expense for debris removal exceeds the limit of liability for the damaged property, an additional 5% of that limit of liability will be available to cover debris removal expense." (*Id*.)

The policy was in full force and effect on July 2, 2009, when plaintiff's rental home was substantially damaged by fire. (Doc. 1, Exhibit A, COMPLAINT, at ¶¶ 3 & 5.) At the time of the fire, the insured plaintiff was renting the house to his daughter for less than market value. (Doc. 9, Exhibit B, August 31, 2009 Memo., at 2.) Mattox timely notified State Farm of the fire damage. (Doc. 1, Exhibit A, COMPLAINT, at ¶ 6.) It was determined by origin and cause investigator Harold Deese that lightning was the cause of the fire and loss. (Doc. 9, Exhibit B, at 2.)

State Farm Claims Representative Jeff Stauter ("Stauter") was involved in the handling of Mattox's claim.[1] (Doc. 1, Exhibit H, Declaration of Jeff Stauter, at ¶ 5.) Stauter inspected the Mattox rental property and prepared an initial estimate to repair the damaged property, as well as a Statement of Loss summarizing the loss amounts. (Doc. 1, Exhibit H, Stauter declar., at ¶¶ 7-8.) The initial detailed estimate to repair or replace the damaged property is dated August 31, 2009 Doc. 13, Exhibit J),[2] the same date that Stauter penned an internal loss report stating that the **"[l]oss [is] over policy limits per State Farm estimate so not eligible for PSP[]" and the "structure is a constructive total loss because the ACV Xactimate repair estimate exceeded the policy**

---

[1]     Stauter met with Mattox on July 8, 2009 and, again on July 10, 2009, to inspect the fire damage and to discuss policy coverage. (Doc. 1, Exhibit A, STATE FARM RESPONSES, at ¶ 7; *see also* Doc. 13, Exhibit B, State Farm Activity Log, at 6 (entry for August 17, 2009 reflects Stauter's notation that he met with Mattox on July 10, 2009).)

[2]     "The estimate to repair or replace your damaged property is **$340,243.58**. The enclosed claim payment to you of **$319,916.00** is for the actual cash value of the damaged property at the time of loss, less any deductible that may apply. We determined the actual cash value by deducting depreciation from the estimated repair or replacement cost. Our estimate details the depreciation applied to your loss. Based on our estimate, the additional amount available to you for replacement cost benefits (recoverable depreciation) is **$6,591.74**. If you cannot have the repairs completed for the repair/replacement cost estimated, please contact your claim representative prior to beginning repairs." (Doc. 13, Exhibit J, at 2.) This estimate, however, is not the estimate to which Stauter refers in his initial declaration. (*Compare id. with* Doc. 1, Exhibit H, Stauter declar., at ¶ 7.)

When the numbers are "crunched" on this first estimate, Stauter is correct that the actual cash value of the first estimate was $330,542.84, that is, the total replacement cost value ($340,243.58) less depreciation ($5,493.12), overhead and profit ($1,098.62), and the deductible ($3,109.00). (*Compare* Doc. 13, Exhibit I, Supplemental Declaration of Jeff Stauter, at ¶ 8 *with* Doc. 13, Exhibit J, at 1.) Stauter avers that this first estimate included in its scope both the debris removal and repair work (Doc. 13, Exhibit I, Stauter declar., at ¶ 8), and indeed this estimate does contain a general demolition subtotal of $2,056.40 (Doc. 13, Exhibit J, at 75), as well as numerous entries for demolition labor not contained in the second estimate (*compare id.* at 75-85 *with* Doc. 13, Exhibit L, at 75-85). Curiously, however, the second estimate does retain some costs for demolition labor. (*See* Doc. 13, Exhibit L, at 77 & 82.)

limit."[3] (Doc. 9, Exhibit B, Internal Memo, at 3 (emphasis added); *see also* Doc. 13, Exhibit K, Internal Memo, at 4 (the Team Manager was Tim Wade and it was his recommendation that the "State Farm estimate completed and ACV exceeds coverage A limit . . . **TM recommends approval of RFA[4] as submitted for $334,368.66**[.]" (emphasis in original).)[5]

A review of State Farm's Activity Log for August 31, 2009 through September 2, 2009 reflects a flurry of activity. (*See* Doc. 13, Exhibit B, at 5.) On August 31, 2009, Tim Wade noted that Stauter had submitted an RFA review and that it was his request that State Farm pay Coverage A, contents loss, and six months loss of rent at $1,500 per month. (*See id*.) This entry also reflects Wade's recommendation for approval of RFA for $334,368.66; he also requested "SM review and approval of RFA[,] Future landscape repairs[, and] DMO estimates[.]" (*Id*.) Approximately five hours later, Alan L. Cox made an entry noting that "SM authority extended to $334,368.66 per RFA." (*Id*.)[6] The following day, September 1, 2009, Tim Wade noted that total file authority was extended and informed Stauter that it was okay for him to move forward but that he was to add a "log" on how he was computing the loss of rents before payment was made. (*Id*.; *see also id*. ("Update FACETS for future handling.").)

---

[3]     For his part, Mattox was unaware of the existence of the internal memo until the remaining portions of the State Farm claims file were produced in December of 2011. (Doc. 9, MOTION TO REMAND, at ¶¶ 10-11.)

[4]     RFA is an acronym for Request for Authority. (*See* Doc. 13, Exhibit B, at 6.)

[5]     At least during mid-August, 2009, Mattox was undecided on whether he would repair the house or "TEAR IT DOWN AND START OVER." (Doc. 13, Exhibit B, Activity Log, at 6, August 17, 2009 Entry.) On August 17, 2009, Stauter completed his revisions on the initial estimate. (*Id*.)

[6]     Cox, however, questioned the recommendation for 6 months loss of rents at $1,500.00 per month. (*See id*.)

4

On September 2, 2009, State Farm, through its Claims Representative, prepared another detailed estimate to repair or replace the damaged property (Doc. 13, Exhibit L, at 2 ("The estimate to repair or replace your damaged property is **$309,148.47**. The enclosed claim payment to you of **$299,447.73** is for the actual cash value of the damaged property at the time of loss, less any deductible that may apply. We determined the actual cash value by deducting depreciation from the estimated repair or replacement cost. Our estimate details the depreciation applied to your loss. Based on our estimate, the additional amount available to you for replacement cost benefits (recoverable depreciation) is **$6,591.74**. If you cannot have the repairs completed for the repair/replacement cost estimated, please contact your claim representative prior to beginning repairs.")) and issued Mattox a "Statement of Loss" reflecting a dwelling coverage limit of $319,916.00 and a total payable amount of $328,868.66 (*compare* Doc. 1, Exhibit B to Stauter declar., Statement of Loss *with* Doc. 1, Exhibit H, Stauter declar., at ¶ 8 ("I provided a copy of the Statement of Loss to Plaintiff in September of 2009.")).[7]

---

[7]     The Statement of Loss did not provide an itemized description of the dwelling coverage limit. (*See* Doc. 1, Exhibit B to Stauter declar.) Instead, it simply recites the Coverage A limit of liability and amount payable of $319,916.00, the Coverage B Contents limit of liability of $15,545.00 and amount payable of $5,561.01, and the Coverage C Loss of Use amount payable of $4,500.00. (*Id.*) The total amount payable of $328,868.66 is obtained by adding the three amounts payable noted above ($319,916.00, $5,561.01, and $4,500.00--$329,977.01) and subtracting depreciation of Coverage B contents by $1,108.35. (*See id.*)

Although Stauter states in his supplemental declaration that he "provided" Mattox a copy of the initial estimate dated August 31, 2009 on September 2, 2009 (Doc. 13, Exhibit I, Stauter supp. declar., at ¶ 8), this Court need make no inference that plaintiff actually received a copy of this estimate both because plaintiff's counsel has made a Rule 11 representation that Mattox never received a copy of same (Doc. 15, at ¶ 7) and because Stauter's initial declaration, filed in support of the removal petition, makes no mention whatsoever of the first estimate and explicitly states only that State Farm's claims representative "provided" plaintiff a copy of the Statement of Loss in September of 2009 (Doc. 1, Exhibit H, at ¶ 8). In addition, nothing about plaintiff's communications with Stauter after September 2, 2009 betrays any indication that Mattox received a copy of the initial estimate from State Farm's claims representative. (*See* Doc. 13, Exhibit B.)

That same date, September 2, 2099, plaintiff was paid the policy limit of $319,916.00 (*id.* at ¶ 10), along with the actual cash value for contents totaling $5,561.01 and the Coverage C loss of rents for three months totaling $4,500.00, for a total payment on September 2, 2009 of $328,868.66 (*compare* Doc. 1, Exhibit B to Stauter declar., Statement of Loss *with* Doc. 13, Exhibit B, Activity Log at 5 (Stauter's September 2, 2009 notation at 10:33 a.m. that he "ISSUED DRAFT FOR DWG LIMIT PLUS ACV CONTENTS AND 3 MONTHS LOR AT $1500/M.")).

Stauter's final Activity Log entry for September 2, 2009, at 10:33 a.m., also reflects his conversation with Mattox regarding DMO coverage, as follows: "DISCUSSED THE DMO ADDITIONAL COVERAGE, AND ADVISED THE INSD THAT HE WOULD BE ENTITLED TO SOME BENEFIT IF HE INCURRED DMO, BUT THE AMT WOULD DEPEND ON WHAT HE DID AS FAR AS DMO GOES. ADVISED HIM OF 5% DMO LIMIT, AND THAT WOULD BE THE MAXIMUM ADDITIONAL BENEFIT." (Doc. 13, Exhibit B, at 5.) This entry also reflects the following notation: "T: THE ONLY REMAINING ITEMS ARE THE LANDSCAPING, DMO, AND LOR." (*Id.*)  According to Stauter, it was plaintiff's inquiry about the additional 5% debris removal coverage[8] which prompted him to prepare a second estimate (Doc. 13, Exhibit I, Stauter supp. declar., at ¶ 11); however, this is curious since this estimate was prepared by Stauter at 10:22 a.m. on September 2, 2009 (*see* Doc. 13, Exhibit L), that is, before the Activity Log entry reflecting his conversation with Mattox. This second estimate, according to Stauter, was a "Repair Only Estimate" which did not include debris removal or

---

[8]     At this point in time, Mattox "had not yet incurred any debris removal expense." (Doc. 13, Exhibit I, Stauter supp. declar., at ¶ 10.)

demolition in the scope of work,[9] contained an actual cash value amount of $299,447.73, and was provided to plaintiff. (Doc. 13, Exhibit I, Stauter supp. declar., at ¶ 11.)[10]

On October 8, 2009, Mattox faxed to Stauter a demolition/removal proposal prepared by Mark Keel Construction, LLC totaling $12,500.00. (Doc. 13, Exhibit M, Demolition Proposal.) State Farm's Activity Log reflects the following entry on October 22, 2009: "C-Discussed file w/ CR.[11] N[I][12] has presented DMO bill to tear down entire structure. NI DMO is not consistent w/ our scope and repair estimate. CR completed new est removing our DMO and we still exceed the limits. SF DMO is higher for partial tear down than NI submitted DMO for total teardown. NI DMO plus SF ACV do not exceed our prior payment. No addt payment due from our review." (Doc. 13, Exhibit B, at 4.) On October 23, 2009, Stauter contacted Mattox to discuss the additional debris removal coverage. (*Compare* Doc. 13, Stauter supp. declar., at ¶ 13 *with* Doc. 13, Exhibit B, Activity Log Entry for October 23, 2009.) Stauter informed Mattox that he was not entitled to the additional 5% debris removal coverage "because the Repair Only Estimate ($299,447.73), which did not include debris removal coverage, plus the debris removal estimate Plaintiff submitted ($12,500.00), was less than the amount Plaintiff had already been paid ($319,916.00)." (*Id.*; *compare id. with* Doc. 13, Exhibit B, Activity Log Entry for October 23, 2009 ("TOLD HIM THAT OUR ACV LOSS WITHOUT DMO

---

[9] As previously pointed out, however, this second estimate does retain some costs for demolition labor. *See* fn.2, *supra*.

[10] This second estimate was definitely mailed to Mattox upon his request on January 27, 2010 (*see* Doc. 13, Exhibit B, Activity Log, at 2, January 27, 2010 Entry) but it also appears that plaintiff had this estimate in his possession when he spoke to Stauter on October 23, 2009 (*compare id. with id.,* October 23, 2009 Entry).

[11] The CR, of course, is Stauter.

[12] Presumably, NI is State Farm's designation for named insured.

PLUS HIS DMO WAS LESS THAN WHAT WE HAVE ALREADY PAID HIM. OUR RC W/O DMO PLUS HIS DMO IS ALSO LESS THAN WHAT WE HAVE PAID HIM, WHICH IS THE DWELLING LIMIT. UNLESS THERE IS SOMETHING WRONG OR MISSING FROM MY ESTIMATE, WE WOULD NOT BE ABLE TO PAY ANYTHING ELSE FOR DMO. HE WILL REVIEW MY ESTIMATE AND CALL ME BACK.").)

Mattox disputed State Farm's position on the additional debris removal coverage on October 23, 2009[13] and on two occasions in January 2010—the 19th and 27th. (Doc. 13, Stauter supp. declar., at ¶ 14.) Indeed, at least a week prior to January 19, 2010, Mattox twice faxed Stauter "RAISING A FEW QUESTIONS" and although Stauter attempted to call Mattox the two were unable to connect. (*See* Doc. 13, Exhibit B, Activity Log, at 2.)[14] Mattox did reach Stauter by telephone on January 19, 2012, State Farm's Activity Log entry reflecting the following: "INSD CALLED. DISCUSSED CLAIM. I INADVERTENTLY LEFT OFF THE REUPHOLSTERY COSTS FROM CI. I WILL REVISE AND ADD. HE IS WORKING ON GETTING AN ESTIMATE ON THE CHARCOAL PORTRAITS AND THE SHADOWBOX. WE AGREED THAT WE WOULD WAIT UNTIL WE GET THAT ESTIMATE TO REVISE CI. WE DISCUSSED THE DEMO OF THE HOUSE, WHICH HAS BEEN COMPLETED. HE HAS NOT DECIDED WHETHER HE WILL REBUILD. OUR ESTIMATE WAS TO REPAIR THAT HOUSE, NOT TO DEMOLISH AND START OVER. DISCUSSED ADDITIONAL COVERAGE FOR DEBRIS REMOVAL. HE WILL REVIEW HIS POLICY AND CALL

---

[13]     On November 12, 2009, Mattox called Stauter and requested a copy of his policy. (Doc. 13, Exhibit B, Activity Log, at 3.) The Activity Log indicates that Mattox finally received a copy of his policy sometime in early January of 2010. (*See id.* at 2-3.)

[14]     On January 8, 2010, Mattox faxed Stauter and requested "a breakdown showing how the amount [on the Statement of Loss--$319,916.00] was calculated." (Doc. 15, Exhibit F.)

ME." (*Id.*) Some eight days later, on January 27, 2010, Stauter contacted Mattox by phone after receiving a fax communication from plaintiff. (*Id.*)[15] "HE WANTS TO KNOW WHY HE CAN'T GET THE DEBRIS REMOVAL ADDITIONAL COVERAGE AMT. I TOLD HIM THAT OUR ACV ESTIMATE WITHOUT DMO WAS $299,447.73, AND IF YOU ADD THE ACTUAL DMO COSTS TO REMOVE THE ENTIRE HOUSE ($12,500), THAT IS STILL LESS THAN WHAT WE PAID, THE POLICY LIMITS OF $319,916. HE ASKED FOR A COPY OF THAT ESTIMATE. MAILED HIM A COPY OF THAT ESTIMATE." (*Id.*)

In early February of 2010, Tim Wade instructed Stauter to tell Mattox not to contact him by fax, should he receive any more fax communications from plaintiff; to send a letter to Mattox "comparing his request to what you have already paid (same as you have described)[;]" and to "[u]pdate FACETS to clarify what is still needed and open[.]" (*Id.*) On February 11, 2010, Stauter made the following FACETS entry on the Activity Log:

> F:      LARGE PARTIAL LOSS TO DWELLING.
> A:      COVERED LOSS DUE TO FIRE AS A RESULT OF LIGHTNING.
> C:      ALL ITEMS THAT HAVE BEEN SUBMITTED HAVE BEEN HANDLED.
> E:      SF ESTIMATE OF REPAIR EXCEEDED THE DWG LIMIT. DWG LIMIT HAS BEEN PAID. CONTENTS SUBMITTED HAVE BEEN HANDLED AND PAID.
> T:      WAITING ON INSD TO SUBMIT INFO ON OPEN ITEMS ON PPIFS.
> S:      NO SUB OR SALVAGE.
> !:      NO ITEL OR PSP ELIGIBLE BECAUSE LOSS EXCEEDED THE LIMIT.

(*Id.*)

---

[15]      This fax communication reads, in relevant part, as follows: "Even though you explained how you arrived at that figure in our recent phone conversation, I'm afraid I still don't understand your explanation. Please provide me with a detailed breakdown showing how this amount was calculated." (Doc. 15, Exhibit G.)

On April 10, 2010, Mattox faxed Stauter a letter stating that **"[a]fter reviewing the details you furnished on January 27, 2010 repeatedly, I have been unable to reconcile the figures with the figures contained in the September 2, 2009 Statement of Loss that was provided."** (Doc. 1, Exhibit C, FACSIMILE TRANSMITTAL SHEET (emphasis added).) Mattox therein provided his list of costs and itemizations. (*Id.*)

I have included this figure for Omitted Items [i.e., $1,133.94[16]] in the Recap of the Statement of Loss to arrive at the total for the claim and the amount due to settle the claim as follows:

**Recap of Statement of Loss**

Coverage A-Building (Amount from 9/2/09 Statement) … $319,916.00
Coverage A-Demolition Costs . . . . . . . . . . . . . . . . . . . . . . . . . $12,500.00
Subtotal-Coverage A . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $332,416.00

Coverage B-Contents (Amount from 9/2/09 Statement) . . . . $5,561.01
Coverage B-Contents (Omitted Items) . . . . . . . . . . . . . . . . . . .$1,133.94
Subtotal-Coverage B-Contents . . . . . . . . . . . . . . . . . . . . . . . . $6,694.95

Coverage C-Loss of Use (Amount from 9/2/09 Statement) . . .$4,500.00

Total Loss (A+B+C) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .$343,610.95
Less Dep[]-Coverage B (Amount from 9/2/09 Statement) . . .$1,108.35
Claim Subtotal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .$342,902.60
Less Prior Payment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .$328,868.66
Amount Due . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .$13,633.94

Please advise if the amount is acceptable to State Farm to settle this claim.

(*Id.* at 2.)  Although plaintiff never received a written reply from State Farm to this fax transmission (Doc. 9, at 3), Stauter did call Mattox on April 14, 2010 to discuss the fax after he had "REVISED CI TO INCLUDE REPAIRING THE PORTRAITS AND THE SHADOWBOX, AS WELL AS THE UPHOLSTERY CHARGES ON THE DINING CHAIRS, BENCH SETTEE, AND THE WING BACK CHAIRS." (Doc. 13, Exhibit B,

---

[16]     This dollar figure was for replacement of upholstery and repair of three portraits and a shadowbox. (*See id.* at 1.)

Activity Log, at 1.) After Stauter advised Mattox of the supplemental payment to be made by State Farm, the following Activity Log entry reflects a synopsis of the conversation between the State Farm claims representative and plaintiff regarding the additional debris coverage: "HE ALSO ASKED ME ABOUT THE DEBRIS REMOVAL ADDITIONAL COVERAGE, AND I TOLD HIM AGAIN THAT HIS ACV EST WITHOUT DMO PLUS THE ACTUAL DMO COST DID NOT EXCEED HIS COV A LIMIT WE PAID, SO NO FURTHER PMT IS DUE. HE SAID HE MAY NEED TO CALL HIS ATTY. I ASKED HIM TO HAVE HIS ATTY CALL ME IF HE HAD ANY QUESTIONS. CLOSING FILE PENDING FURTHER CONTACT FROM INSD OR HIS ATTY." (*Id.*)

On March 16, 2011, Mattox filed suit against State Farm Fire and Casualty Company in the Circuit Court of Baldwin County, Alabama, therein asserting a breach of contract claim and also seeking a declaratory judgment. (Doc. 1, Exhibit A, COMPLAINT.)[17] State Farm answered the complaint on April 21, 2011. (Doc. 1, Exhibit A, ANSWER.)

---

[17]      Plaintiff's first complaint reads, in relevant part, as follows:

7.      On or about September 2, 2009, State Farm issued Mattox a "Statement of Loss" with a total payable amount of $328,868.66 as coverage for certain physical damage to the Insured Property as a result of the fire loss.

8.      Thereafter, in September of 2009 and January of 2010, Mattox sent State Farm reports of items inexplicitly (sic) omitted from State Farm's statement of loss, such as the replacement cost of certain upholstery and the cost for demolition/removal of debris, all of which are clearly covered under the Policy.

9.      State Farm has failed and/or refused to include these omitted items in its payable claim, and has failed and/or refused to provide an explanation to Mattox for its determination thereof.

**COUNT ONE**

**Breach of Contract**

(Continued)

On July 6, 2011, Mattox served his first set of interrogatories and requests for production of documents on State Farm. (*See* Doc. 1, Exhibit A, FIRST SET OF INTERROGATORIES AND REQUEST FOR PRODUCTION.) The pertinent items requested by plaintiff in this propounded written discovery include the following:

> 9.       Identify and produce a copy of all correspondence, notes, memoranda, calendars, photographs, documents and/or electronic media that relate in any way to the Subject Property and/or the claim made under the Subject Policy.

> .       .       .

> 10.      State with specificity State Farm's basis and/or explanation for not including within its Statement of Loss the demolition costs and omitted replacement costs, which had an approximate value of $13,633.94, as summarized in Plaintiff's facsimile to State Farm dated April 10, 2010. Further, please produce a copy of all correspondence, notes, memoranda,

---

> .       .       .

> 11.      State Farm has failed and refused to pay the entire claim presented by Mattox thereby breaching its contract of insurance with Mattox.

> 12.      As a proximate result of State Farm's refusal to pay monies owed under the contract, Mattox has incurred damage including, but not limited to, the unnecessary and unreasonable delay created by State Farm's refusal to pay the claim and substantial expense incurred with regard to the Insured Property.

> .       .       .

## COUNT TWO

### Declaratory Judgment

> .       .       .

> 14.      Mattox has timely submitted items of loss from in its (sic) claim to State Farm under the Policy.

> 15.      State Farm has omitted certain items of loss from its statement of loss. These omissions are inconsistent with the terms of the Policy.

(*See id.* at ¶¶ 7-9, 11-12 & 14-15.)

calendars, photographs, documents and/or electronic media that relate thereto.

.     .     .

11.    Identify and produce any and all documents, notes, memoranda, calendars, correspondence, photographs, and electronic media, that concern and/or in any way relate to the claims made in the Complaint and/or any defenses thereto not otherwise identified and/or provided herein.

(*Id*. at 5.) State Farm served its responses to the propounded written discovery on August 19, 2011. (Doc. 1, Exhibit A, NOTICE OF SERVICE OF DISCOVERY.)[18]

On October 3, 2011, plaintiff noticed the 30(b)(6) deposition of State Farm—identifying therein as State Farm's designated corporate representative Jeff Stauter—for November 3, 2011. (Doc. 1, Exhibit A, RULE 30(b)(6) NOTICE OF DEPOSITION DUCES TECUM.)   However, when plaintiff's counsel served the second amended notice of deposition duces tecum on November 1, 2011, the form of Stauter's deposition changed from being a 30(b)(6) deposition to being an individual deposition. (*See* Doc. 1, Exhibit A, **SECOND AMENDED NOTICE OF DEPOSITION DUCES TECUM**.) On November 3, 2011, State Farm's Jeff Stauter was tendered and deposed in his individual capacity. (Doc. 13, Exhibit C, Deposition of Jeff Stauter, at 1 & 8.) Counsel for Mattox terminated Stauter's deposition early due to State Farm's failure to produce all documents requested by plaintiff through propounded written discovery.  (*See id.* at 34

---

[18]    In plaintiff's verified responses to State Farm's first set of interrogatories and requests for production, plaintiff indicated that he was claiming the following: (1) State Farm failed to pay the proper amount due for Coverage A Dwelling and Coverage B Contents; (2) that he had received a total of $328,868.66 from State Farm on Coverages A and B; (3) that the payments made by State Farm were less than the total due under the policy on account of improper calculations of the amounts due and payable; (4) that there was a deficiency in the Coverage B payments; and (5) the total amount due for Coverage A was to include 5% additional coverage for demolition. (*Compare* Doc. 1, Exhibit A, PLAINTIFF'S UNVERIFIED RESPONSES *with id.* NOTICE OF FILING Plaintiff's VERIFIED Responses.)

("[H]e would put summaries of those entries into his activity log and I don't know why you have made the determination not to produce those documents. But we will get them the other way and we will just see you again.").) As a result, Mattox filed a motion to compel on November 7, 2011, therein seeking court-ordered production of State Farm's "entire claim file." (Doc. 1, Exhibit A, MOTION TO COMPEL, at 2.) The trial court granted plaintiff's motion to compel on November 15, 2011, except with respect "to any matters covered by the attorney/client privilege." (Doc. 1, Exhibit A, ORDER.) State Farm produced the remaining portions of the claims file on December 2, 2011, following the trial court's granting of the motion to compel. (*See* Doc. 9, at ¶ 10.)

On January 27, 2012, Mattox filed his first amended complaint and therein added a bad faith claim against State Farm. (Doc. 1, Exhibit D, FIRST AMENDED COMPLAINT.)[19] Stauter was not mentioned as a defendant in plaintiff's first amended

---

[19]     Mattox' first amended complaint contains the same pertinent factual allegations set forth in his original complaint (*compare id.,* at ¶¶ 7-9 *with* Doc. 1, Exhibit A, COMPLAINT, at ¶¶ 7-9) and his bad faith claim reads, in relevant part, as follows:

> 17.     Mattox is the named insured under an insurance contract with State Farm for a rental dwelling policy []. The Policy period was July 9, 2008 through July 9, 2009. The Policy was issued to provide coverage for Mattox's dwelling and personal property located at 10 Rolling Oaks Drive, Fairhope, Alabama.

> 18.     Mattox made a claim under said Policy after his Insured Property caught fire on or about July 2, 2009.

> 19.     State Farm has intentionally refused to pay Mattox's claim under the Policy.

> 20.     There exists no legitimate or arguable reason for State Farm to refuse said claim. The loss occurred within the Policy period; Mattox timely notified State Farm of the same; and provided the required documentation evidencing the damage to his property, which all clearly falls within the Policy's coverage.

> 21.     State Farm has actual knowledge and/or has intentionally failed to determine whether there is a legitimate or arguable reason to refuse to pay Plaintiff's claim.

(Continued)

complaint. (*See id.*) Just shy of two weeks following the filing of the amended complaint, that is, on February 8, 2012, counsel for State Farm propounded requests for admission on plaintiff. (Doc. 13, Exhibit E, at ¶¶ 1-2 ("Admit that you are claiming as damages in this lawsuit an amount greater than $75,000.00, exclusive of interest and costs. . . . Admit that you intend to recover damages in this lawsuit in an amount greater than $75,000.00, exclusive of interest and costs.").) Concurrent with responding to State Farm's requests for admission and admitting both requests (*see* Doc. 13, Exhibit G), that is, on March 12, 2012, Mattox amended his complaint a second time and added Stauter as a defendant (Doc. 1, Exhibit E, SECOND AMENDED COMPLAINT).  In the second amended complaint, Mattox asserts claims against both Stauter and State Farm for fraud and suppression. (*Id.* at ¶¶ 26-41.)  The second amended complaint, as to the counts alleged against Stauter, reads, in relevant part, as follows:

> 7.     Mattox timely notified State Farm of said [fire] damage [occurring on July 2, 2009] and made a claim for benefits under the above-referenced policy. Mattox then provided the required documentation of the damage incurred to State Farm by and through its Claim Representative, Jeff Stauter.
>
> 8.     On or about September 2, 2009, State Farm issued Mattox a "Statement of Loss" with a total payable amount of $328,868.66 as coverage for certain physical damage to the Insured Property as a result of the fire loss.

---

> 22.     As a proximate result of State Farm's bad faith refusal to pay monies owed under the contract, Mattox has incurred damage including, but not limited to, the unnecessary and unreasonable delay created by State Farm's refusal to pay the claim, substantial expenses incurred with regard to the Insured Property, and attorney's fees pursuing this action.
>
> WHEREFORE, the premises considered, Mattox demands judgment against State Farm for compensatory, consequential, and punitive damages in an amount in excess of this Court's jurisdictional limits, plus attorney's fees, interest and costs.

(*Id.* at 3-4.)

9.      Thereafter, in September of 2009 through April of 2010, Mattox sent Jeff Stauter reports of items inexplicitly (sic) omitted from State Farm's statement of loss, such as the replacement cost of certain upholstery and the cost for demolition/removal of debris, all of which are clearly covered under the Policy.

10.     Mattox also inquired specifically as to the additional debris removal coverage. Jeff Stauter represented to Mattox that his loss estimate did not exceed the coverage limit in order to trigger the additional debris removal coverage.

11.     Since obtaining the entire claim file and internal correspondence from State Farm through discovery in this matter, it has become apparent to Mattox that on or around September of 2009 Jeff Stauter intentionally and arbitrarily reduced and/or fixed the initial statement of loss amount in order to avoid triggering the additional debris removal coverage.

12.     The Defendants have failed and/or refused to include these omitted items in the payable claim, and have failed and/or refused to provide any explanation to Mattox for the determination thereof.

.      .      .

## COUNT FOUR

### Fraud/Intentional Misrepresentation

.      .      .

27.     Mattox made a claim under his State Farm Policy after his Insured Property caught fire on or about July 2, 2009.

28.     Unbeknownst to Mattox, on or around September of 2009, State Farm through its Claim Representative, Jeff Stauter, intentionally and arbitrarily reduced and/or fixed the initial statement of loss amount in order to avoid triggering the additional debris removal coverage.

29.     Mattox contacted Jeff Stauter numerous times in writing and via telephone from September of 2009 through April of 2010 and inquired specifically as to the absence of the additional debris removal coverage, among other items.

30.     The Defendants willfully and intentionally misrepresented to Mattox that his loss estimate did not exceed the coverage limit in order to trigger the additional debris removal coverage.

31.     The Defendants knew that said representations were false, and were made for the purpose of inducing Mattox into accepting the insufficient coverage payment.

32.     Had Mattox known the true facts and calculations, he would have brought this action even sooner.

33.     Mattox reasonably relied on the intentional misrepresentation of the Defendants and has been damaged by not receiving the full amount of his Policy coverage, substantial expenses incurred with regard to the Insured Property, and attorney's fees in pursuing this action.

WHEREFORE, the premises considered, Mattox demands judgment against the Defendants for compensatory and punitive damages in an amount in excess of this Court's jurisdictional limits, plus attorney's fees, interest and costs.

## COUNT FIVE

### Fraudulent Suppression

.     .     .

35.     Mattox made a claim under his State Farm Policy after his Insured Property caught fire on or about July 2, 2009.

36.     On or around September of 2009, State Farm through its Claims Representative, Jeff Stauter, intentionally and arbitrarily reduced his statement of loss amount in order to avoid triggering the additional debris removal coverage.

37.     Mattox contacted Jeff Stauter numerous times in writing and via the telephone from September of 2009 through April of 2010 and inquired specifically as to the absence of the additional debris removal coverage, among other items.

38.     The Defendants had a duty to disclose to their policyholder the facts surrounding the arbitrary reduction in his statement of loss.

39.     The Defendants concealed said facts and failed to disclose the same when specifically inquired about in writing by Mattox in April of 2010.

40.     Had Mattox known the true facts and calculations, he would have brought this action even sooner.

41.     As a result of the Defendants' fraudulent suppression, Mattox has been damaged by not receiving the full amount of his Policy

coverage, substantial expenses incurred with regard to the Insured Property, and attorney's fees in pursuing this action.

WHEREFORE, the premises considered, Mattox demands judgment against the Defendants for compensatory and punitive damages in an amount in excess of this Court's jurisdictional limits, plus attorney's fees, interest and costs.

(Doc. 1, Exhibit A, SECOND AMENDED COMPLAINT, at ¶¶ 7-12, 27-33 & 35-41).)

State Farm timely filed its notice of removal with this Court on March 15, 2012 in accordance with 28 U.S.C. §§ 1332, 1441, and 1446. (Doc. 1, NOTICE OF REMOVAL, at 1; *see also* Doc. 3 (Stauter's joinder).) The removing defendants argue that complete diversity exists in this case between State Farm and Mattox because Stauter was fraudulently joined.[20] (*Id.* at 4.) The removing parties maintain that "there is no possibility that Plaintiff can establish a cause of action against Stauter" because "[t]he claims against Stauter are barred by the statute of limitations, incorrectly pleaded and are otherwise not viable claims." (*Id.* at ¶ 15.) State Farm and Stauter contend that Mattox's fraud claims are barred by Alabama's two-year statute of limitations for the following reasons:

19.     The fraudulent acts that Plaintiff complains of occurred in 2009 and absent the application of the tolling provisions contained in Ala. Code § 6-2-3 (1975), those claims are barred by the statute of limitations. Although there may be some limited arguments concerning the application of the tolling provision, at the very latest, Plaintiff's claim[s] accrued on January 27, 2010, when he discovered or should have discovered the alleged fraud.

.     .     .

26.     In January 2012 (sic), Plaintiff was in possession of (1) the Statement of Loss; (2) the repair estimate; and, (3) the Policy. In addition, Plaintiff had been told numerous times that he was not entitled to the additional 5% debris removal coverage. Plaintiff also had contacted State

---

[20]     Mattox is a resident citizen of Baldwin County, Alabama. (Doc. 1, Exhibit A, SECOND AMENDED COMPLAINT, at ¶ 1.) State Farm is an Illinois corporation, and Jeff Stauter is a resident citizen of Mobile County, Alabama. (*Id.* at ¶¶ 2 & 3.)

Farm on several occasions to dispute the decision on the application of the additional 5% debris removal coverage.

27.     On April 10, 2010, Plaintiff sent a letter by facsimile to Stauter that stated as follows: "After reviewing the details you furnished on January 27, 2010 repeatedly, I have been unable to reconcile the figures contained in the September 2, 2009 Statement of Loss that was provided."

.        .        .

28.     Thus, as of January 27, 2010, Plaintiff was in possession of information and documents that when reviewed, provoked an inquiry in his mind and as stated by Plaintiff was "unable to [be] reconcile[d]." Plaintiff repeatedly inquired about the applicability of the additional 5% debris removal coverage and disputed State Farm's position on that issue in September 2009, October 2009 and January 2010. As such, the statute of limitations for Plaintiff's fraud claim and suppression claim expired no later (but really much earlier) than January 2012, which is nearly two months before the claims against Stauter were first filed.

(*Id.* at ¶¶ 19 & 26-28 (internal citations omitted; emphasis eliminated).)[21] Additionally, in the removal petition, it is contended, albeit somewhat cryptically, that Mattox's fraud and suppression claims should be dismissed because they lack the specificity required to satisfy Rule 9(b) of the Federal and Alabama Rules of Civil Procedure. (*Id.* at ¶ 32.)

---

[21]     The removing parties also point out what they consider the peculiar timing of the claims asserted against Stauter in the Second Amended Complaint, same being filed contemporaneous with plaintiff's responses to State Farm's requests for admission. (*Id.* at ¶ 30.)

[T]he sheer timing of the filing of the claims against Stauter, the non-diverse defendant, shows the sham nature of the claims asserted against him. After Plaintiff filed his Amended Complaint and stated a claim against State Farm for bad faith, State Farm propounded requests for admissions to Plaintiff asking him to admit that he was seeking as damages an amount in excess of $75,000.00, exclusive of [interest and] costs. The requests for admissions were propounded on February 9, 2012 and the responses were due on or before March 12, 2012. Knowing that if he admitted the requests the case would become removable, Plaintiff filed the Second Amended Complaint on March 12, 2012 (contemporaneous with admitting the requests) in an effort to defeat diversity jurisdiction. This was the first time fraudulently joined Jeff Stauter was named as a defendant even though Plaintiff had already amended his Complaint to state a claim for bad faith.

(*Id.* (internal citations omitted).)

Finally, it is contended that Mattox's claims for fraud and suppression fail because "where (as here) the alleged representations as to coverages provided under a policy are in fact true, there is no requisite false statement and consequently there can be no misrepresentation as a matter of fact and law." (*Id.* at ¶ 33; *see also* ¶¶ 34-35 (both misidentified as additional paragraphs 32).)[22]

Mattox filed his motion to remand on April 4, 2012. (Doc. 9.) He argues that complete diversity of citizenship does not exist in this case and, thus, this case is not removable pursuant to 28 U.S.C. § 1332(a)(1). (*Id.*) In arguing that State Farm has not met its burden of establishing fraudulent joinder, Mattox asserts that his claims against Stauter are not barred by the two year statute of limitations. (*Id.* at ¶ 12.)

> 5.    On April 10, 2010 the Plaintiff faxed Jeff Stauter a letter stating that "[a]fter reviewing the details you furnished on January 27, 2010 repeatedly, I have been unable to reconcile the figures contained in the September 2, 2009 Statement of Loss that was provided." Plaintiff then provided therein his completed list of costs and itemizations. The loss calculation documents that Plaintiff received from Stauter on January 27, 2010, which State Farm contends Plaintiff's fraud claim[s] should have accrued as a result of reading, did not contradict the misrepresentations made by Stauter. In fact the oral misrepresentations and the documents sent to Plaintiff on January 27, 2010 are consistent. These documents did not reveal Stauter and/or State Farm's fraud or suppression.
>
> .    .    .
>
> 8.    On November [3], 2011, the Plaintiff and State Farm met for the deposition of State Farm's 30(b)(6) representative, Jeff Stauter.[23] During said deposition Stauter referenced several State Farm claim file documents, and after further inquiry by Plaintiff's counsel, Stauter acknowledged that the same were not produced by State Farm in its responses to the requests for production. Stauter explained that some of

---

[22]    As to the amount-in-controversy requirement, the removing parties simply point out that Mattox "has admitted that he is claiming as damages an amount in excess of $75,000.00, exclusive of interest and costs." (*See* Doc. 1, at 12.)

[23]    As previously found by this Court, and as is clear from the record, Stauter was tendered in his individual capacity. (*See* Doc. 13, Exhibit C, Stauter depo., at 8.)

the documents were call logs and notes recorded by himself after conversations with the Plaintiff regarding his disputed claim. The Plaintiff then stayed the deposition until he was in receipt of all related and requested documentation in Defendant's possession.

      9.    On November 7, 2011, the Plaintiff filed a Motion to Compel regarding the State Farm claim file documents. The Baldwin County Circuit Judge granted the Plaintiff's motion on November 15, 2011.

      10.    As a result, on December 2, 2011, State Farm produced to Plaintiff the remaining portions of the State Farm claim file that were not previously produced.

      11.    After Plaintiff's review of the same, it was *then* discovered that on August 31, 2009 Stauter issued a Loss Evaluation stating that the "loss [is] over policy limits per State Farm estimate" and the "structure is a constructive total loss because the ACV Xactimate repair estimate exceeded the policy limit." Under Plaintiff's policy, when the "amount payable for the actual damage to the property plus the expense for debris removal exceeds the limit of liability for the damaged property, an additional 5% of that limit of liability will be available to cover debris removal expense." However, when the Plaintiff inquired about the statement of loss he received dated September 2, 2009, which was inconsistent with his calculations, Stauter represented to him that State Farm's "ACV("actual cash value") ESTIMATE WITHOUT DMO ("demolition") WAS $299,447.73, AND IF YOU ADD THE ACTUAL DMO COSTS TO REMOVE THE ENTIRE HOUSE ($12,500), THAT IS STILL LESS THAN WHAT WE PAID, THE POLICY LIMIT OF $319,916." Stauter's representations to the Plaintiff are in complete contrast with his evaluation on August 31, 2009. There is nothing in State Farm's file to explain the inexplicable and convenient reduction in values. Stauter misrepresented to the Plaintiff the true results of his evaluation and suppressed the same until State Farm was compelled by the Baldwin County Circuit Court to produce the records.

      12.    Prior to the compelled discovery production, Plaintiff had no way of discerning the fraud and suppression being conduct[ed] internally by Jeff Stauter and so his claims did not accrue until discovering the same through reviewing the remainder of the State Farm claim file. The Plaintiff filed his Second Amended Complaint adding Defendant Jeff Stauter on March 16, 2012 well within two years of the discovery. Therefore, Plaintiff[']s claims against Stauter are not barred by the two year statute of limitations.

(*Id.* at 5 & 8-12 (internal citations omitted; emphasis in original).) Additionally, Mattox

disagrees with the argument that his pleadings of fraud and suppression are

insufficient under Rule 9(b) of the *Alabama Rules of Civil Procedure*. (*Id.* at ¶ 13.) Mattox

argues that because the "pleading has sufficiently met the purpose behind the rule which is to give fair notice to the opposing party" (*id.* at ¶ 14), it satisfies the requirements of Rule 9 (b) (*id.* ("The Plaintiff's fraud and fraudulent suppression pleading both state the time . . . the place . . . and the substance of the false representations.")). Finally, Mattox disagrees with the argument that his fraud claims cannot be brought against Stauter because his representations were true. (*Id.* at ¶ 15 ("State Farm's assertion is inaccurate.").)  This is because, plaintiff argues, Stauter's representations to Mattox that the ACV estimate (without demolition) plus the demolition costs are below the policy limit "are in complete contrast with his [loss] evaluation on August 31, 2009. " (*Id.* at ¶ 17 ("[The] Loss Evaluation stat[ed] that the '[l]oss [is] over policy limits per State Farm estimate' and the 'structure is a constructive total loss because the ACV Xactimate repair estimate exceeded the policy limit.'").) "Stauter misrepresented to the Plaintiff the true results of his evaluation in order to keep the loss estimate below the limit amount to avoid the additional coverage per the policy. Further, Stauter suppressed the same until State Farm was compelled by the Baldwin County Circuit Court to produce the records." (*Id.*)[24]

     In opposition to Mattox's motion to remand, the removing parties direct the Court's attention to four reasons why the Court should deny Plaintiff's motion (Doc. 13, at 1-2; *see* Doc. 14 (Stauter's joinder in the opposition)),[25]  but then shift their focus to

---

[24]    Plaintiff concedes in his motion to remand that "he is claiming damages in an amount in excess of $75,000.00." (Doc. 9, at 7.)

[25]    "(1) The claims asserted against Stauter are barred by the applicable statute of limitations which expired, at the latest, in January 2012 and are not saved by the tolling provision of Ala. Code § 6-2-3 (1975). Accordingly, they fail as a matter of law. (2) Plaintiff's claims against Stauter fail as a matter of law because there was no requisite false statement. All of the alleged misrepresentations are in fact true. (3) Plaintiff's claims fail as a matter of law because he did not rely on any alleged false statement. Plaintiff disputed and objected to State (Continued)

point out Mattox's lack of explanation concerning "the highly questionable timing of

the claims against Stauter." (*Id.* at 2.) In its timeline set forth in the Introduction, State

Farm directs the Court's attention to the following:

| | |
|---|---|
| December 2, 2011 | State Farm produced its non-privileged claims file to Plaintiff. Included in the production was the August 31, 2009 internal report which Plaintiff now claims caused him to discover the alleged fraudulent conduct. |
| January 27, 201[2] | Plaintiff filed his First Amended Complaint stating [an] additional claim[] against State Farm for bad faith. The First Amended Complaint did <u>not</u> state claims against Jeff Stauter. |
| | Plaintiff claims to have discovered the alleged fraud by Stauter when he received State Farm's non-privileged claims file. However, Plaintiff was in possession of State Farm's non-privileged claims file for **eight weeks** before filing his First Amended Complaint. Despite having discovered the alleged fraud by Stauter, Plaintiff consciously decided not to add claims against Stauter in his First Amended Complaint. |
| February 8, 2012 | State Farm propounded Requests for Admissions to Plaintiff asking him to admit that he is claiming as damages an amount greater than $75,000.00. The responses to the Requests for Admissions were due on or before March 12, 2012. |
| March 12, 2012 | On the same day, Plaintiff filed his Second Amended Complaint, asserting claims for the first time against Stauter, and served his responses to the Requests for Admissions admitting he is claiming as damages an amount greater than $75,000.00. |

(*Id.* at 3 (internal citations omitted; emphasis in original).) Thus, State Farm

contends "[i]t is obvious that the claims against Stauter are nothing more than an

---

Farm's position consistently and continues to dispute that position. (4) Plaintiff's claims fail as a matter of law because he was not induced to act or refrain from acting. Plaintiff acted over and over again by disputing State Farm's position." (*Id.*)

effort to usurp this Court's jurisdiction and those efforts should not be

rewarded." (*Id.* at 4.)

In an attempt to clarify the differing information regarding Stauter's statements

about the repair estimates, State Farm makes the following assertions:

> 5.    As a Claims Representative for State Farm, Jeff Stauter
> investigated the claim and prepared an estimate to repair the damage to
> the Insured Property. That estimate included in its scope both the debris
> removal/demolition and the repair work (hereinafter the "First
> Estimate"). . . . On or about September 2, 2009, Plaintiff was provided with
> a copy of the First Estimate and a Statement of Loss summarizing the loss
> amounts.

> 6.    The actual cash value amount of the First Estimate was
> $330,542.84. On or about September 2, 2009, Plaintiff was paid the Policy
> limit of $319,916.00. At that time, Plaintiff had not incurred any expense
> for debris removal.

> 7.    On August 31, 2009, Stauter prepared and submitted an
> internal loss report summarizing the damage and requesting authority to
> issue payment for the Policy limit for the dwelling (hereinafter "Loss
> Evaluation"). In the Loss Evaluation, Stauter stated that the "loss [is] over
> policy limits per State Farm estimate" and the "structure is a constructive
> total loss because the ACV Xactimate repair estimate exceeded the policy
> limit." The ACV Xactimate repair estimate is, of course, the same
> document as the First Estimate. It is the only estimate that had been
> prepared at that time. It was the same estimate that had been sent to the
> Plaintiff.

> 8.    On September 2, 2009, Plaintiff inquired about the additional
> 5% debris removal coverage. To determine whether Plaintiff would be
> entitled to any additional debris removal coverage, Stauter prepared a
> second estimate that did <u>not</u> include debris removal or demolition in the
> scope of work (hereinafter "Repair Only Estimate"). . . . The actual cash
> value for the Repair Only Estimate was $299,447.73. Plaintiff was
> provided a copy of the Repair Only Estimate. Plaintiff's entitlement to the
> additional 5% debris removal coverage necessarily depended on the
> expense for debris removal that Plaintiff incurred. For example, if Plaintiff
> incurred a debris removal expense of more than $20,468.27 ($319,916.00
> minus $299,447.73), he might be entitled to some additional debris
> removal coverage.

> 9.    On October 8, 2009, Plaintiff submitted a demolition estimate
> from Mark Keel Construction for $12,500.00 and inquired about the
> additional 5% debris removal coverage.

   10. On October 23, 2009, Stauter contacted Plaintiff and informed him that he was not entitled to any additional debris removal coverage because the Repair Only Estimate ($299,447.73), which did not include debris removal coverage, plus the debris removal estimate Plaintiff submitted ($12,500.00), was <u>less</u> than the amount Plaintiff had already been paid ($319,916.00). Plaintiff <u>disputed</u> State Farm's position and told Stauter that he would review the Debris Removal/Repair Estimate[26] and call him back.

(*Id.* at 5-7, ¶¶ 5-10 (internal citations omitted; emphasis in original).) State Farm argues that Stauter's January 2010 statement and his internal memorandum statement on August 31, 2009 refer to different estimates and are not inconsistent with each other; therefore, Mattox's position that the discovery of the Loss Evaluation (on December 2, 2011) first made him aware that Stauter's other statements were false is inaccurate. (*Id.* at 14.) State Farm again contends that the date of accrual of the fraud claim is (at the latest) January 27, 2010. (*Id.* at 11 ("Plaintiff explicitly acknowledge[d] that the documents and information that were provided to him in January, 2010 provoked an inquiry in his mind.").) Thus, it is contended that the claims against Stauter are barred by the two year statute of limitations[27] and cannot be saved by the tolling provision, which plaintiff has failed to establish is applicable. (*Id.* at 13-15.)

   In the response to the motion to remand, the removing parties reiterate the argument that there was no requisite false statement as to coverage provided under the policy, such that Mattox cannot state a claim for fraud or suppression (*id.* at 15-16), but

---

[26] It is anything but clear from this entry that plaintiff was referring to the first estimate, that is the estimate that the removing parties refer to as including debris removal, when speaking to Stauter on October 23, 2009. Indeed, from the context of the Activity Log entry, and as suggested in the first sentence of this paragraph 10 of the defendant's brief in response, the estimate plaintiff was referring to is the estimate which State Farm labels the "repair only" estimate. (*Compare* Doc. 13, ¶ 10 *with* Doc. 13, Exhibit B, at 3.)

[27] The latest date of accrual (according to State Farm and Stauter) of plaintiff's fraud claims is January 27, 2010 and Mattox's second amended complaint was filed on March 12, 2012, some one and one-half months too late. (*See id.* at 10.)

also add, for the first time, that even if Stauter's statements were untrue, Mattox still would not have a valid fraud claim because he did not rely on Stauter's representation (*id.* at 17)[28] and he would not have a valid suppression claim because he was not induced to act, nor did he refrain from acting, based on any alleged fraudulent suppression by Stauter (*id.* at 17-18).

On April 26, 2012, Mattox replied to State Farm's opposition to remand, arguing that Stauter was not fraudulently joined (Doc. 15, at 1), and, more specifically, that his claims against Stauter are not barred by the statute of limitations (*id.* at 2-4).

> 7.     Defendants contend that they sent Plaintiff their "First Estimate and a Statement of Loss" on September 2, 2009. However, the only estimate/statement of loss Plaintiff received was a Statement of Loss that contained no itemizations. This document is limited in information and calculations and is not the same document as referenced in and attached to the Defendants' opposition motion. On January 8, 2010, Plaintiff even requested via facsimile that Stauter send him a breakdown of the totals listed in the limited statement of loss he received on September 2, 2009.  On January 27, 2010, Plaintiff requested again from Stauter a breakdown of his calculations as he still had never received the same. It was not until after State Farm was compelled by order of the Baldwin County Circuit Court to produce the remaining portion of Plaintiff's State Farm claim file, that Plaintiff *then* discovered that on August 31, 2009, Stauter issued a Loss Evaluation stating that the "[l]oss [is] over policy limits per State Farm estimate" and the "structure is a constructive total loss because the ACV Xactimate repair estimate exceeded the policy limit." Further, that same evaluation/document stated [] the following:

| | |
|---|---|
| **Coverage A** | **$319,916.00 (limit)** |
| **Debris Removal** | **To be determined** |
| **Trees/Shrubs/Plants** | **To be determined** |

> Plaintiff was never provided this information and/or evaluation until receipt of the Court compelled documents in December of 2011.

> 8.     Therefore, prior to the compelled discovery production, Plaintiff had no way of discerning the "facts constituting the fraud" and

---

[28]     "Plaintiff repeatedly disputed State Farm's position that he was not entitled to any additional payments for debris removal coverage and did not believe that to be true." (*Id.*)

the suppression being conducted internally by Jeff Stauter, and so, his claims did not accrue until discovering the same through reviewing the remainder of the State Farm claim file. *See* Ala.Code § 6-2-3 (1975). The Plaintiff filed his Second Amended Complaint adding Defendant Jeff Stauter on March 16, 2012 well within two years of the discovery [of the fraud]. Therefore, Plaintiff's claims against Stauter are not barred by the two year statute of limitations.

(*Id.* at 3-4, ¶¶ 7-8 (most internal citations omitted; emphasis in original).) Additionally,

Mattox maintains that Stauter did, indeed, make the requisite false statement needed

for claims of fraud and suppression, and, as well, that the removing defendants'

reasonable reliance and inducement to act (or refrain from acting) arguments are not

well taken. (*Id.* at 4-7.)

## CONCLUSIONS OF LAW

### A.   Jurisdiction in General.

There can be no doubt but that "[f]ederal courts are courts of limited jurisdiction,

and there is a presumption against the exercise of federal jurisdiction, such that all

uncertainties as to removal jurisdiction are to be resolved in favor of remand." *Russell*

*Corp. v. American Home Assurance Co.*, 264 F.3d 1040, 1050 (11th Cir. 2001) (citation

omitted); *see also Allen v. Christenberry*, 327 F.3d 1290, 1293 (11th Cir.) ("[R]emoval

statutes should be construed narrowly, with doubts resolved against removal."), *cert.*

*denied*, 540 U.S. 877, 124 S.Ct. 277, 157 L.Ed.2d 140 (2003); *University of South Alabama v.*

*American Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999) ("Because removal jurisdiction

raises significant federalism concerns, federal courts are directed to construe removal

statutes strictly. . . . Indeed, all doubts about jurisdiction should be resolved in favor of

remand to state court."); *see Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375,

377, 114 S.Ct. 1673, 1675, 128 L.Ed.2d 391 (1994) ("Federal courts are courts of limited

jurisdiction. They possess only that power authorized by Constitution and statute,

which is not to be expanded by judicial decree[.]"  (internal citations omitted)).

Moreover, the removing defendant must bear "the burden of demonstrating federal jurisdiction." *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 n.4 (11th Cir. 1998) (citation omitted).  Stated differently, because federal courts are courts of limited jurisdiction "[i]t is . . . presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction[.]" *Kokkonen, supra*, 511 U.S. at 377, 114 S.Ct. at 1675 (internal citations omitted).

Where, as here, jurisdiction is predicated on diversity of citizenship pursuant to 28 U.S.C. § 1332 (*see* Doc. 1, at ¶¶ 8-9 ("This action is removable pursuant to 28 U.S.C. § 1441(a) because it is a civil action of which this Court has original jurisdiction and because State Farm is removing this action to the District Court for the United States for the district and division embracing the place where the action is pending. [] This Court has original jurisdiction of this action pursuant to 28 U.S.C. § 1332(a)(1) because complete diversity exists between the properly joined parties and because the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interests and costs.")),  the removing parties, State Farm and Stauter (*see* Doc. 3 (Stauter's consent to removal)), bear the burden of establishing complete diversity of citizenship, that is, that plaintiff is diverse from all the defendants, *Triggs, supra*, 154 F.3d at 1287 (citation omitted), and, in addition, must establish by a preponderance of the evidence that the amount in controversy more likely than not exceeds the $75,000 jurisdictional requirement, *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1357 (11th Cir. 1996) ("[W]e hold where a plaintiff has made an unspecified demand for damages in state court, a removing defendant must prove by a preponderance of the evidence that the amount in controversy more likely than not exceeds the $[75,000] jurisdictional requirement."),

*abrogated on other grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000).[29]

Moreover, as a procedural matter, the removal must be timely. *See, e.g., Clingan v. Celtic Life Ins. Co.*, 244 F.Supp.2d 1298, 1302 (M.D. Ala. 2003) ("The time limit in 28 U.S.C. § 1446(b) is 'mandatory and must be strictly applied.'"); *cf. Moore v. North America Sports, Inc.*, 623 F.3d 1325, 1329 (11th Cir. 2010) ("[T]he timeliness of removal is a procedural defect-not a jurisdictional one.").

## B.   Whether Complete Diversity of Citizenship Exists.

As previously indicated, the diversity statute, 28 U.S.C. § 1332, demands complete diversity, such that plaintiffs may not be citizens of the same state as any defendant. *See, e.g., Florence v. Crescent Resources, LLC*, 484 F.3d 1293, 1297 (11th Cir. 2007) (recognizing "necessary corollary" of diversity jurisdiction that "complete diversity of citizenship" is required); *Legg v. Wyeth,* 428 F.3d 1317, 1320 n.2 (11th Cir. 2005) ("28 U.S.C. § 1332 requires 'complete diversity'-the citizenship of every plaintiff must be diverse from the citizenship of every defendant.").

"Fraudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity." *Triggs, supra*, 154 F.3d at 1287. Notwithstanding the complete diversity requirement, a non-diverse defendant who is fraudulently joined does not destroy jurisdiction because his citizenship is excluded from the diversity

---

[29]     Mattox concedes that the amount in controversy in this case exceeds the $75,000 jurisdictional requirement (Doc. 9, at 7 ("Plaintiff stipulates that he is claiming damages in an amount in excess of $75,000.00.")), and makes no argument that this case was untimely removed to this Court, *compare* 28 U.S.C. § 1446(b)(3) ("Except as provided in subsection (c), if the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.") *with In re Uniroyal Goodrich Tire Co.*, 104 F.3d 322, 324 (11th Cir. 1997) ("The untimeliness of a removal is a procedural, instead of a jurisdictional, defect."). Accordingly, the sole issue before this Court is whether complete diversity of citizenship exists.

equation. Under well-settled law, a finding of fraudulent joinder is appropriate in circumstances presented here only if "'there is no possibility the plaintiff can establish a cause of action against the resident defendant.'" *Henderson v. Washington Nat'l Ins. Co.*, 454 F.3d 1278, 1281 (11th Cir. 2006) (emphasis supplied; citation omitted); *see also Florence, supra*, 484 F.3d at 1299 ("[I]f there is any possibility that the state law might impose liability on a resident defendant under the circumstances alleged in the complaint, the federal court cannot find that joinder of the resident defendant was fraudulent, and remand is necessary."); *Triggs*, 154 F.3d at 1287 ("'If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court.'"). Thus, "[t]he plaintiff need not have a winning case against the allegedly fraudulent defendant; he need only have a possibility of stating a valid cause of action in order for the joinder to be legitimate." *Id*. (citation omitted); *see also Pacheco de Perez v. AT&T Co.*, 139 F.3d 1368, 1380 (11th Cir. 1998) ("Where a plaintiff states even a colorable claim against the resident defendant, joinder is proper and the case should be remanded to state court.").

"The determination of whether a resident defendant has been fraudulently joined must be based upon the plaintiff's pleadings at the time of removal, supplemented by any affidavits and deposition transcripts submitted by the parties. . . . In making its determination, the district court must evaluate factual allegations in the light most favorable to the plaintiff and resolve any uncertainties about the applicable law in the plaintiff's favor." *Pacheco de Perez*, 139 F.3d at 1380 (citations omitted); *see also Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997) ("To determine whether the case should be remanded, the district court must evaluate the factual allegations in the light most favorable to the plaintiff and must resolve any uncertainties about state

substantive law in favor of the plaintiff. . . . The federal court makes these determinations based on the plaintiff's pleadings at the time of removal; but the court may consider affidavits and deposition transcripts submitted by the parties."); *Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1561 (11th Cir. 1989) ("In addressing the issue of fraudulent joinder, the district court should resolve all questions of fact and controlling law in favor of the plaintiff and can consider any submitted affidavits and/or deposition transcripts.").

> While "the proceeding appropriate for resolving a claim of fraudulent joinder is similar to that used for ruling on a motion for summary judgment under Fed.R.Civ.P. 56(b)," the jurisdictional inquiry "must not subsume substantive determination." Over and over again, we stress that "the trial court must be certain of its jurisdiction before embarking upon a safari in search of a judgment on the merits."

*Crowe, supra*, 113 F.3d at 1538 (internal citations omitted).

"In a fraudulent joinder inquiry, 'federal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law.'" *Pacheco de Perez*, 139 F.3d at 1380-1381 (quoting *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997)).

> In terms of this circuit's law, the main point for us is this one: For a Plaintiff to present an arguable claim against an in-state defendant and, therefore, to require a case removed to federal court to be remanded to state court, the plaintiff need not show that he could survive in the district court a motion for summary judgment filed by that in-state defendant. For a remand, the plaintiff's burden is much lighter than that: after drawing all reasonable inferences from the record in the plaintiff's favor and then resolving all contested issues of fact in favor of the plaintiff, there need only be "a reasonable basis for predicting that the state law might impose liability on the facts involved." Because the procedures are similar while the substantive standards are very different, district courts must exercise extraordinary care to avoid jumbling up motions for remand and motions for summary judgment that come before them.

> In the remand context, the district court's authority to look into the ultimate merit of the plaintiff's claims must be limited to checking for obviously fraudulent or frivolous claims. Although we have said that

district courts may look beyond the face of the complaint, we emphasize that the district court is to stop short of adjudicating the merits of cases that do not appear readily to be frivolous or fraudulent.

*Crowe*, 113 F.3d at 1541-1542 (internal citations omitted).

Because the removing defendants must show by clear and convincing evidence that there is no possibility plaintiff can establish a cause of action against the resident defendant, *Henderson*, 454 F.3d at 1281, it is no surprise that courts describe the burden on the removing parties to prove fraudulent joinder as a "heavy one." *Crowe*, 113 F.3d at 1538 (citation omitted).

Since Mattox and Stauter are Alabama citizens for diversity purposes, State Farm and Stauter predicate removal jurisdiction under § 1332 on their argument that Stauter's citizenship does not count in the diversity analysis since he was fraudulently joined. The pivotal issue in this case is whether a possibility exists that plaintiff can establish a fraud claim against the resident defendant.[30]

---

[30]      Prior to reaching the substantive arguments the removing defendants interpose in favor of removal and in opposition to remand, the undersigned need address parenthetically the defendant's argument that "the sheer timing of the filing of the claims against Stauter . . . shows the sham nature of the claims asserted against him." (Doc. 1, at ¶ 33; *see also id.* ("After Plaintiff filed his Amended Complaint and stated a claim against State Farm for bad faith, State Farm propounded requests for admissions to Plaintiff asking him to admit that he was seeking as damages an amount in excess of $75,000.00, exclusive of [interest and] costs. The requests for admissions were propounded on February 9, 2012 and the responses were due on or before March 12, 2012. Knowing that if he admitted the requests the case would become removable, Plaintiff filed the Second Amended Complaint on March 12, 2012 (contemporaneous with admitting the requests) in an effort to defeat diversity jurisdiction. This was the first time fraudulently joined Jeff Stauter was named as a defendant even though Plaintiff had already amended his Complaint to state a claim for bad faith."); *see* Doc. 13, at 2-4.) While the undersigned is not totally unsympathetic to the defendant's argument in this regard, this Court should not allow this argument to "win the day" given four other critical concerns, as identified in *Owens v. Life Ins. Co. of Georgia,* 289 F.Supp.2d 1319 (M.D. Ala. 2003), which place the focus of this Court back where it should be and that is on whether the removing defendants have shown by clear and convincing evidence that there is no possibility that plaintiff can survive the statute of limitations defense and state a cause of action against the resident defendant: "First, federal courts are tribunals of limited jurisdiction. . . . Second, the diversity jurisdiction statute, 28 U.S.C. § 1332, is strictly construed because of the significant federalism concerns raised by (Continued)

C.    **Statute of Limitations**.

The removing parties contend that Mattox cannot state a cause of action against Stauter for fraud because there is simply no possibility that an Alabama court could find that the statute of limitations has not run on plaintiff's fraud claims. Pursuant to Alabama law, actions for fraud are subject to a two-year period of limitations. *Compare* Ala.Code § 6-2-38(*l*) ("All actions for any injury to the person or rights of another not arising from contract and not specifically enumerated in this section must be brought within two years.") *with Foremost Ins. Co. v. Parham*, 693 So.2d 409, 417 (Ala. 1997) ("Claims of fraudulent misrepresentation and suppression are subject to a two-year statute of limitations."). This two year limitations period is subject to the "savings clause" set forth in Ala.Code § 6-2-3: "In actions seeking relief on the ground of fraud where the statute has created a bar, the claim must not be considered as having accrued until the discovery by the aggrieved party of the fact constituting the fraud, after which he must have two years within which to prosecute his action." *Id.*

Section 6-2-3 thus "supplies an objective test, tolling the statute of limitations on a fraud claim until the aggrieved party discovers or, in the exercise of reasonable care, should have discovered, the facts constituting the fraud." *Wheeler v. George*, 39 So.3d 1061, 1081 (Ala. 2009). The limitations period, therefore, commences "when the plaintiff discovers the fraud or when facts are known '"which would put a reasonable mind on notice that facts to support a claim of fraud might be discovered upon inquiry."'" *Id.*

---

federal courts passing on matters of state law. [] Third, a plaintiff is master of his complaint. [] Fourth, 28 U.S.C. § 1447(c) provides that '[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, [a removed] case shall be remanded.'" *Id.* at 1322. In other words, this Court need resist the temptation to focus on the actions of the plaintiff and thereby effectively lessen the removing defendants' burden of establishing that Jeff Stauter was fraudulently joined to defeat diversity jurisdiction.

(citations omitted). When a plaintiff is deemed to have discovered the fraud is governed by the "reasonable reliance" standard set forth in *Foremost, supra. Compare* 693 So.2d at 421 ("After careful consideration, we conclude that the 'justifiable reliance' standard adopted in *Hickox,* which eliminated the general duty on the part of a person to read the documents received in connection with a particular transaction (consumer or commercial), should be replaced with the 'reasonable reliance' standard most closely associated with *Torres v. State Farm Fire & Casualty Co.,* 438 So.2d 757 (Ala. 1983). The 'reasonable reliance' standard is, in our view, a more practicable standard that will allow the factfinder greater flexibility in determining the issue of reliance based on all of the circumstances surrounding a transaction, including the mental capacity, educational background, relative sophistication, and bargaining power of the parties. In addition, a return to the 'reasonable reliance' standard will once again provide a mechanism, which was available before *Hickox*, whereby the trial court can enter a judgment as a matter of law in a fraud case where the undisputed evidence indicates that the party or parties claiming fraud in a particular transaction were fully capable of reading and understanding their documents, but nonetheless made a deliberate decision to ignore written contract terms.") *with id*. at 417 ("Prior to *Hickox v. Stover,* 551 So.2d 259 (Ala. 1989), and *Hicks v. Globe Life & Accident Ins. Co.*, 584 So.2d 458 (Ala. 1991), this Court had held that a fraud claim accrued, thus commencing the running of the statutory limitations period, when the plaintiff discovered the fraud or when the plaintiff should have discovered the fraud in the exercise of reasonable care."). And while "'[t]he question of when a party discovered or should have discovered the fraud is generally one for the jury[,]'" *Ex parte Seabol*, 782 So.2d 212, 216 (Ala. 2000),[31] quoting *Liberty Nat'l*

---

[31]     In *Ex parte Seabol*, the Supreme Court of Alabama determined that fact questions
(Continued)

*Life Ins. Co. v. Parker,* 703 So.2d 307, 308 (Ala. 1997); *see also  Dickinson v. Land Developers Constr. Co., Inc.,* 882 So.2d 291, 298 (Ala. 2003) ("We have held that the question of when a party discovered or should have discovered the fraud is generally one for the jury." (internal quotation marks and brackets omitted)), as recognized in *Foremost, supra,* "the trial court can enter a judgment as a matter of law in a fraud case where the ***undisputed evidence*** indicates that the party or parties claiming fraud in a particular transaction were fully capable of reading and understanding their documents, but nonetheless made a deliberate decision to ignore written contract terms."  693 So.2d at 421 (emphasis supplied); *see Dickinson, supra,* 882 So.2d at 294 & 298 (in a case on appeal following entry of summary judgment in favor of the defendants by the trial court, the Alabama Supreme Court noted that " a party will be deemed to have 'discovered' a fraud as a matter of law upon the first of either the actual discovery of the fraud or when the party becomes privy to facts that would provoke inquiry in a reasonable person that, if followed up, would lead to the discovery of the fraud.").[32]

---

regarding commencement of the limitations period precluded summary judgment. *See id.* at 216-217 ("In the present case, the documents at issue are not as easily understood. The mortgage did not in any way refer to future advances of money, and the note promising to pay the future advances indicated that it was secured by a mortgage. Therefore, it would be difficult for Seabol to deduce, simply by reading the mortgage and the promissory note, that the mortgage did not constitute a valid lien against the six acres of property. Even though Seabol had knowledge of real-estate transactions and had possession of copies of the mortgage papers, a jury, taking Seabol to be a reasonable realtor, could find that his reliance on the oral representations of his attorney and his banker was reasonable. Therefore, the summary judgment was improper as to Seabol's fraud and suppression claims against Suntrust and Johnson.").

[32]   The two cases to which the Supreme Court in *Dickinson* cites to in support of this proposition, *Auto-Owners Ins. Co. v. Abston,* 822 So.2d 1187 (Ala. 2001) and *Gray v. Liberty Nat'l Life Ins. Co.,* 623 So.2d 1156 (Ala. 1993), were either, like *Dickerson,* decided on summary judgment or at a later stage of the proceedings. *Abston, supra,* 822 So.2d at 1188 (appeal from judgment entered on a jury verdict in favor of the defendant's insured); *Gray, supra,* 623 So.2d at 1158 (appeal from a grant of summary judgment on behalf of the defendant by the trial court that plaintiff's fraud claim was barred by the statute of limitations).

>        *Fraud is discoverable as a matter of law* for purposes of the statute of
>        limitations *when one receives documents* that would put one on such *notice*
>        that the fraud reasonably should be discovered. However, documents that
>        are vague or that do not reasonably indicate that a fraud has occurred,
>        based on the circumstances of each case, will not warrant a finding that
>        the fraud claim is barred as a matter of law.
>
>                                    .        .        .
>
>        The question of when a plaintiff should have discovered fraud should be
>        taken away from the jury and decided as a matter of law only in cases
>        where the plaintiff *actually knew* of facts that would have put a reasonable
>        person on notice of fraud.

*Wheeler, supra,* 39 So.3d at 1082 & 1082-1083 (internal quotation marks, citations and

brackets omitted; emphasis in original).)

The primary conceptual problem the undersigned has with the defendant's

argument that this Court can, on removal, decide as a matter of law that there is simply

no possibility that an Alabama court could find that the statute of limitations has not

run on plaintiff's fraud claims is, simply put, that only on one occasion have Alabama

courts decided this issue at the motion to dismiss stage and that was in a case which not

only was decided pre-*Foremost* but also which is at polar opposites from the facts in this

case, as presently established. In *Lewis v. East Alabama Funeral Ins. Co., Inc.,* 472 So.2d

1090 (1985), the Alabama Court of Civil Appeals affirmed the trial court's judgment

dismissing a complaint as time-barred based upon fraud that occurred on March 3, 1947

and was sued upon some thirty-six (36) years later inasmuch as plaintiffs did not show

"why they could not have discovered the alleged fraud through the exercise of due

diligence[,][33] [n]or [did] they aver[] any facts [] show[ing] that East Alabama

---

[33]     The contract of insurance entered into by the Lewises with East Alabama
provided that "certain burial and funeral benefits would be provided upon the death of the
Lewises' daughter, Pauline, in return for periodic payments of $.11 per week for fifteen years[]"
but not the benefits to which the Lewises claimed were represented to them on March 3, 1947,
to-wit, "up to one thousand miles of transportation of the[ir] daughter's body from the place of
(Continued)

fraudulently prevented discovery of facts constituting the alleged fraud." *Id.* at 1092 (footnote added); *see also id.* at 1091. This case holds no precedential value for this Court because plaintiff makes no claim like present in *Lewis* where the Lewises possessed a burial policy stating one thing, but were told other things by the insurance company some thirty-six (36) years earlier; instead, what plaintiff is basing his fraud claims upon are representations/suppressions occurring during the claims handling process, which obviously fell in much closer proximity to the filing of the complaint than was the case in *Lewis*, when plaintiff was not in possession of all documents contradicting the alleged oral misrepresentations or the information allegedly suppressed.  Indeed, the passage of 36 years accounts for the *Lewis* decision as every other decision cited by the defendant, or found by this Court, was decided as a "matter of law" on summary judgment, or later in the proceedings, after the close of all discovery. *Compare Dickinson, supra,* 882 So.2d at 294 (summary judgment); *Ex parte Seabol, supra,* 782 So.2d at 216-217 (questions of material fact precluded the grant of summary judgment); *Foremost, supra,* 693 So.2d at 413 ("The defendants . . . appeal from a judgment entered in this fraud case on separate jury verdicts for the plaintiffs[.]"); and *Papastefan v. B & L Construction Co., Inc. of Mobile,* 385 So.2d 966, 967 (Ala. 1980) ("On the first appeal of this case . . . , plaintiffs appealed the trial court's grant of defendant's motion for summary judgment given on the ground that the applicable statute of limitations had expired. We reversed, holding that there existed a genuine issue for trial as to whether more than one year had elapsed from the time plaintiffs had discovered the alleged fraud, or should have discovered it, to the time of filing suit, thereby precluding summary judgment on the limitations

---

her death to Alexander City, Alabama; the preservation and embalming of her body; casket; and funeral and burial expenses." *Id*. at 1090-1091.

issue. Upon remand to the trial court, plaintiffs put on their case in chief, after which the defendant's motion for a directed verdict was granted. Plaintiffs again appeal.") *with Wheeler, supra,* 39 So.2d at 1068 (appeal from summary judgments entered in favor of all appellees); *Potter v. First Real Estate Co., Inc.,* 844 So.2d 540, 542 (Ala. 2002) (summary judgment); and *Ex parte American General Finance, Inc.,* 795 So.2d 685, 686-687 (Ala. 2000) (summary judgment). Thus, the overwhelming weight of Alabama case law supports a determination that the question of whether the statute of limitations has run on plaintiff's fraud claims would not be decided by Alabama courts as a matter of law until presented in a properly-filed motion for summary judgment after the close of all discovery.

Defendant, of course, is asking this Court to reach the conclusion that there is simply no possibility that an Alabama court could find that the statute of limitations has not run on plaintiff's fraud claims effectively at a motion to dismiss stage, despite the consistent approach by Alabama courts post-*Foremost*, as reflected above, to await summary judgment to make such determination as a matter of law. In urging this Court to chart this path, State Farm relies upon the following fraudulent joinder cases: *Owens, supra*; *Fowler v. Provident Life & Acc. Ins. Co.,* 256 F.Supp.2d 1243 (N.D. Ala. 2003); *Bullock v. United Benefit Ins. Co.,* 165 F.Supp.2d 1255 (M.D. Ala. 2001); and *Whitlock v. Jackson Nat'l Life Ins. Co.,* 32 F.Supp.2d 1286 (M.D. Ala. 1998). Ultimately, however, *Whitlock* is not helpful to the defendant because that case ended in a remand to state court. *See id.* at 1293. More importantly, none of these cases furthers this Court's analysis of the issue because, to the extent each case was decided adversely to the plaintiffs, it was because each plaintiff predicated liability on representations occurring at or around the date of purchase of the policy or annuity when each plaintiff was in possession of documents contradicting the alleged oral misrepresentations or the information allegedly

suppressed. *Owens, supra,* 289 F.Supp.2d at 1325 & 1326 ("Here, because Plaintiff predicates liability on representations occurring at or around the date of purchase in 1984, the two year statute of limitations clearly had run on July 17, 2003, the date Plaintiff filed his Complaint. . . . In the instant case, Plaintiff had in his possession documents which contradicted the alleged oral misrepresentations made by Adams and provided the information allegedly suppressed. . . . In sum, under the *Foremost* objective standard, Plaintiff should have discovered the possibility of fraud and misrepresentation in 1984 when he purchased the Policy, and the two year statute of limitations commenced running at that time."); *Fowler, supra,* 256 F.Supp.2d at 1245 & 1248-1249 ("Plaintiff asserts claims against Marshall for fraudulent and/or negligent misrepresentation and fraudulent suppression, arising from her purchase of the disability insurance policy. . . . Without evidence or argument to the contrary, it is entirely reasonable to presume that plaintiff, a former real estate agent, was capable of reading the policy in 1992 when it was issued. Therefore, plaintiff became aware of the fraud allegedly committed, and the misrepresentations allegedly made, by Marshall in 1992."); *Bullock, supra,* 165 F.Supp.2d at 1257 & 1258 ("Plaintiff's claims stem from the fact that, in April 1998, Rhodes represented to Plaintiff that the health insurance policy that Plaintiff was purchasing would have a $2,500 deductible and a $1,000 outpatient deductible rider provision annually. Further, Plaintiff alleges that, at the time of the sale in April 1998, Rhodes fraudulently represented to Plaintiff that the $1[,]000 deductible outpatient treatment would apply to outpatient treatment provided to her on or about June 15, 1999 at the Southeast Alabama Medical Center and failed to disclose to Plaintiff that the $1[,]000 outpatient deductible would not apply to certain outpatient procedures or treatment. . . . Here, because Plaintiff predicates liability on representations and omissions occurring at or around the date of purchase in 1998, the two year statute of

limitations clearly had run on May 9, 2001, the date Plaintiff filed her Complaint. . . . In the instant case, Plaintiff had in her possession documents which contradicted the alleged oral misrepresentations made by Rhodes and provided the information allegedly suppressed. Specifically, the policy provides a list of covered outpatient procedures and thereby defines the limitations on coverage. The fact that Plaintiff elected not to read her policy does not toll the statute of limitations. Under the *Foremost* objective standard, the statute of limitations for Plaintiff's fraud claims against Rhodes began running in 1998 and expired no later than 2000, which is more than two years before Plaintiff filed this action." (internal quotation marks omitted)); *Whitlock, supra,* 32 F.Supp.2d at 1291-1292 ("The facts of the instant case are very similar to those of the *Foremost* case, and the court, upon application of the *Foremost* reasonable reliance standard, accordingly reaches the same conclusion as to Plaintiff McMurtry. On April 20, 1994, Defendants represented to Plaintiffs that Plaintiffs could withdraw up to ten percent [] from the Annuity each year without penalty. Plaintiff McMurtry bought the Annuity based on this representation. On June 2, 1995, Plaintiff McMurtry executed two Service Forms to withdraw funds from the Annuity. On September 15, 1995, Plaintiff again executed a Service Form to withdraw funds from the Annuity. Each of these Service Forms contained the following language: 'This withdrawal may be subject to taxation based on IRS guidelines in effect at the time of this withdrawal' and 'Withdrawals prior to age 59 ½ of annuitant may be subject to IRS penalty.' On those same forms, Plaintiff McMurtry elected not to have any applicable federal taxes withheld from her withdrawal sum. Each form was signed by Plaintiff McMurtry. Although Plaintiff McMurtry does not explicitly state that she never read the Service Forms, her claim that she was not aware of a withdrawal penalty prior to May 1996 leads the court to infer that she did not read the documents. Upon examination of the

Service Forms, the court finds that [the] Service Forms 'if read or even briefly skimmed would have put reasonable persons on notice that, contrary to [defendants'] representation,' a penalty would be assessed for withdrawal of funds from the Annuity prior to a certain date. Plaintiffs proffer no reason why the statute of limitations should not begin to run as to Plaintiff McMurtry upon her execution of the Service Forms. Plaintiffs do not argue that Plaintiff McMurtry was incapable of reading or understanding the Service Forms. Therefore, the court finds as a matter of law that the statute of limitations began to run as to Plaintiff McMurtry's claims upon her execution of the Service Forms. Because the first Service Form was executed on June 2, 1995 and Plaintiffs did not file their Complaint until March of 1998, the court finds that Plaintiff McMurtry's fraud claims against the Resident Defendants are barred by the two-year statute of limitations.").  Here, of course, liability is not predicated on alleged misrepresentations or suppression of information occurring at or around renewal of the subject policy, but instead, liability is predicated on misrepresentations or suppressions occurring during State Farm's adjustment/handling of plaintiff's claim; therefore, the federal cases relied upon by defendant simply do not foreclose the possibility that in the state courts of Alabama, under the unique circumstances presented here, Mattox can overcome the statute of limitations bar. More importantly, because the removing defendants have not come forward with a federal case finding fraudulent joinder in a situation like the present, where liability is predicated on misrepresentations—or the suppression of information—during the adjustment or handling of a claim, and the Alabama courts post-*Foremost* have signaled that the statute of limitations should be decided as a matter of law only at the summary judgment stage or later, after the close of all discovery, this Court should decline at this point in the proceedings to make such a finding as a matter of law.

Nevertheless, even probing further into the issue does not reveal that this Court should, as a matter of law, determine that there is no possibility that the state courts of Alabama could conclude that the statute of limitations has not run on Mattox's fraud claims.[34] While State Farm and Stauter contend that the latest accrual date of plaintiff's fraud claims is January 27, 2010, given plaintiff's explicit acknowledgement (in April, 2010) that the documents and information provided to him in January of 2010 "provoked an inquiry in his mind[,]" (*see, e.g.*, Doc. 13), plaintiff stakes the position that he had no way of discerning the facts constituting the fraud until December of 2011 when State Farm was compelled to produce its entire claim file and he learned for the first time that on August 31, 2009 Stauter penned an internal memorandum stating the "[l]oss [is] over policy limits per State Farm estimate" and the "structure is a constructive total loss because the ACV Xactimate repair estimate exceeded the policy limit." (*See, e.g.*, Doc. 15, at 4.) There can be no doubt, of course, that plaintiff could not reconcile the various numbers he was provided by the defendants by January 27, 2010, that is, the ACV estimate without DMO of $299,447.73 (*compare* Doc. 13, Exhibit B, at 2, January 27, 2012 Entry *with* Doc. 13, Exhibit L, September 2, 2009 Estimate), with the figures contained in the Statement of Loss furnished on September 2, 2009 (*see* Doc. 1, Statement of Loss), so much so that on April 10, 2010, plaintiff advised State Farm by

---

[34]    The undersigned notes that the defendant stakes the position that plaintiff's failure to "meet his burden of proving that his fraud claims come within the tolling provisions of . . . § 6-2-3[]" requires the denial of the motion to remand. (Doc. 13, at 13-15.) However, the Court should reject this position since it ignores the Eleventh Circuit's admonition in *Henderson, supra*, that "[o]rdinarily, where the viability of a plaintiff's claim against a non-diverse defendant depends on whether section 6-2-3's savings clause applies, the case should be remanded summarily; such a question is emphatically a matter for the state courts to decide." 454 F.2d at 1282. Moreover, reading the allegations in the second amended complaint in conjunction with *Henderson's* remaining consideration of Alabama law regarding a fraudulent concealment pleading requirement, the undersigned, like the Eleventh Circuit, is "unable to say there is no possibility []he has asserted a colorable claim for tolling under Ala.Code § 6-2-3." 454 F.3d at 1284.

facsimile that he could not reconcile these figures and demanded payment. In all of plaintiff's communications with State Farm in the latter part of 2009 and the first part of 2010, however, he makes no mention of the August 31, 2009 initial estimate which Stauter insists he sent to Mattox on September 2, 2009, thereby begging the question of whether the plaintiff actually received the estimate, particularly in light of the representation of plaintiff's counsel to this Court that Mattox never received this initial estimate. Thus, with all these different numbers flying around and there being no direct admission from plaintiff that he received the initial estimate, and the undersigned having no desire to infer that Mattox received the initial estimate on the basis of Stauter's amended declaration statement that he "provided" it to plaintiff on September 2, 2009 along with the Statement of Loss,[35] this Court is simply in no position to decide as a matter of law that the state courts of Alabama would find that plaintiff actually knew of facts as of January 27, 2010 (or even earlier, in September of 2009) that would have put a reasonable person on notice of fraud, as opposed to those courts opting for a later accrual date—such as sometime in December of 2011, or even on April 10, 2010— or finding the issue to be a question for the jury to decide. In other words, inasmuch as this Court is limited to ascertaining whether there is a possibility that Mattox can overcome the statute of limitations bar in state court, construing all factual and legal inferences in favor of plaintiff in this case should lead this Court to conclude that it

---

[35]     The undersigned declines to make this inference because Stauter's initial declaration signed and filed on the date of, and in support of, removal, that is, March 15, 2012, only makes clear that plaintiff was provided with the Statement of Loss in September of 2009 (Doc. 1, Declaration of Jeff Stauter, at ¶ 8), and, in addition, makes reference only to the repair estimate reflecting the actual cash value amount of $299,447.73 (*id.* at ¶ 7).

cannot rule out the possibility that a state court would conclude that the statute of limitations has not run on plaintiff's fraud claims.[36]

### D. Rule 9(b) of the Alabama Rules of Civil Procedure and the Federal Rules of Civil Procedure.

As their second fraudulent joinder argument, State Farm and Stauter assert somewhat cryptically in the removal petition that plaintiff's fraud and suppression claims "are due to be dismissed because they lack the specificity required to satisfy Rule 9(b)." (Doc. 1, at ¶ 32.) Of course, Rule 9(b) of the Alabama Rules of Civil Procedure provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity[]" as does Rule 9(b) of the Federal Rules of Civil Procedure, *see* Fed.R.Civ.P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.").

In making this fraudulent joinder argument, however, State Farm and Stauter overlook, as GMAC did in *Grady Brothers Investments, LLC v. General Motors Acceptance Corp.*, 2007 WL 4577701 (S.D. Ala. Dec. 27, 2007), "Eleventh Circuit precedent counseling district courts that '[o]ur task is not to gauge the sufficiency of the pleadings,' in the fraudulent joinder context, inasmuch as 'the decision as to the sufficiency of the pleadings is for the state courts, and for a federal court to interpose its judgment would fall short of the scrupulous respect for the institutional equilibrium between the federal and state judiciaries that our federal system demands.'" *Id*. at *6, quoting *Henderson v. Washington National Ins. Co.*, 454 F.3d 1278, 1284 (11th Cir. 2006).

---

[36]     This determination certainly does nothing to undermine the primary purpose of a statute of limitations which, as recognized in *Foremost, supra*, is "'to compel the exercise of a right of action within a reasonable time so that the opposing party has a fair opportunity to defend.'" 693 So.2d at 417.

> Besides, it has generally been held that the remedy for failure to satisfy Rule 9(b) is not dismissal on the merits, but rather is an opportunity for the plaintiff to replead. To be sure, "[f]ailure to satisfy Rule 9(b) is a ground for dismissal of a complaint." Nonetheless, it has been recognized that a court should not dismiss a claim for noncompliance with Rule 9(b) "without granting leave to amend, unless the defect is simply incurable or the plaintiff has failed to plead with particularity after being afforded repeated opportunities to do so." Thus, whether the First Amended Complaint satisfies Rule 9(b) is an ancillary procedural question divorced from the legal question animating the fraudulent joinder inquiry, to-wit: whether there is any possibility that plaintiff's claims against the non-diverse defendant are cognizable under state law. Regardless of the outcome of the Rule 9(b) inquiry, there is at least a possibility that (with or without repleading) Grady could state a viable misrepresentation claim against MMSI under Alabama law.[37] No further examination of the Rule 9(b) issue is necessary at this juncture.

*Id.* at *6 n. 15 (internal citations omitted; footnote added). Thus, the undersigned recommends that this Court decline the removing parties' invitation to evaluate the sufficiency of Mattox's pleading of his misrepresentation and suppression claims under Rule 9(b)'s particularity requirement.

### E. The Alleged Misrepresentation is True.

As their final fraudulent joinder argument, the removing defendants contend that "[p]laintiff cannot state a claim for fraud or suppression against Stauter because . . . the alleged representations as to coverages provided under the policy are in fact true, there is no requisite false statement and consequently there can be no misrepresentation as a matter of fact or law." (Doc. 1, at ¶ 33.)[38]

---

[37]    There is no question in the undersigned's mind that in this case there is at least a possibility that Mattox can state a viable misrepresentation or suppression claim against Stauter under Alabama law, inasmuch as Alabama law clearly recognizes a "separate tort of fraud or fraudulent suppression in the handling of an insurance claim." *State Farm Fire & Cas. Co. v. Slade*, 747 So.2d 293, 320 (Ala. 1999).

[38]    In the response in opposition to plaintiff's motion to remand, filed April 19, 2012, State Farm and Stauter (*see* Doc. 14) expand upon the fraudulent joinder arguments set forth in the removal petition to assert, for the first time, that "Plaintiff's claims fail as a matter of law because he did not rely on any alleged false statement[,]" . . . and "Plaintiff's claims fail as a (Continued)

matter of law because he was not induced to act or refrain from acting." (Doc. 13, at 2; *see also id.*, at 17-18.) These arguments come too late as they were not timely set forth in the removal petition when they certainly could have been, *compare* 28 U.S.C. § 1446(a) ("A defendant or defendants desiring to remove any civil action from a State court shall file in the district court of the United States for the district and division within which such action is pending a notice of removal signed pursuant to Rule 11 of the Federal Rules of Civil Procedure and containing a short and plain statement of the grounds for removal[.]") *with* 28 U.S.C. § 1446(b)(3) ("Except as provided in subsection (c), if the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable."), and this Court should show no inclination to address them at any length, *cf. May v. Lakeland Regional Medical Center*, 2010 WL 376088, *3 (M.D. Fla. Jan. 25, 2010) ("[T]he evidence proffered by LRMC does not state completely new grounds or allegations for removal, but rather provides specific support for the grounds for removal that already were stated in its Notice of Removal."), particularly since these arguments, like the removing defendants' no "misrepresentation" argument, go to the merits of plaintiff's fraud claims and, as such, should not be decided at this stage of the proceedings but, instead, should be decided by the state trial court on summary judgment or later in the proceedings, as is the normal practice under Alabama law. *See, e.g., Maloof v. John Hancock Life Ins. Co.*, 60 So.3d 263, 265 & 268 (Ala. 2010) ("Harriet Maloof and John A. Maloof, Jr., sued John Hancock Life Insurance Company [] and Parker A. Glasgow, an independent insurance agent, in the Jefferson Circuit Court, alleging fraudulent misrepresentation, suppression, breach of contract, negligent and/or wanton failure to procure insurance, and breach of fiduciary duties arising out of Glasgow's sale of two universal life-insurance policies to the Maloofs in 1989 and 1992. The trial court entered a summary judgment in favor of John Hancock and Glasgow on all the claims, and the Maloofs appeal[.] . . . The Maloofs' fraudulent-misrepresentation and suppression claims were premised on the allegation that Glasgow misrepresented to the Maloofs that the universal-life policies were in their best financial interests and that they would provide funds that would be available to pay the estate taxes due upon John's death, while at the same time suppressing from them the facts that the policies were actually not in their best interests and that benefits from those policies would not be available to pay estate taxes due upon John's death if he lived beyond approximately age 78. . . . In its order granting John Hancock's and Glasgow's motions for summary judgment, the trial court explained its conclusion that evidence of reasonable reliance was lacking[.]"); *AmerUS Life Ins. Co. v. Smith*, 5 So.3d 1200, 1201 & 1216 (Ala. 2008) (in reversing the trial court and rendering a judgment as a matter of law in favor of AmerUS, the Alabama Supreme Court found that "the insureds failed to present substantial evidence [at trial] indicating that Smith's reliance on Jeffrey's representations was reasonable"); *Freightliner, L.L.C. v. Whatley Contract Carriers, L.L.C.*, 932 So.2d 883, 891 & 892 (Ala. 2006) ("We must first consider whether the trial court properly submitted the suppression claim to the jury. The question whether a party had a duty to disclose is a question of law to be determined by the trial court. . . . [W]e must consider whether the ***particular facts and circumstances of this case*** [which were fully set forth during trial] created a common-law duty on Freightliner's part to disclose. We find that the facts and circumstances of this case did not give rise to such a duty."); *Allstate Ins. Co. v. Eskridge*, 823 So.2d 1254, 1258 & 1265 (Ala. 2001) ("We first consider Allstate's argument that the trial court erred in denying its motion for a judgment as a matter of law on Eskridge's fraud claim. . . . Because we conclude that, under the circumstances of this case, Eskridge could not have reasonably relied upon Wamboldt's statement that Eskridge could 'just come back to work' as a basis for his fraud claim, it follows that the trial court erred in denying Allstate's motion for a judgment as a matter of law as to that fraud claim. Accordingly, the judgment of the trial court (Continued)

"'The elements of fraud are: (1) a misrepresentation of a material fact, (2) made willfully to deceive, recklessly, without knowledge, or mistakenly, (3) that was reasonably relied on by the plaintiff under the circumstances, and (4) that caused damage as a proximate consequence.'" *Eskridge, supra*, 823 So.2d at 1258 (citation omitted).  Moreover, "[t]o establish a claim of fraudulent suppression, a plaintiff must produce substantial evidence establishing the following elements: (1) that the defendant had a duty to disclose an existing material fact; (2) that the defendant suppressed that existing material fact; (3) that the defendant had actual knowledge of the fact; (4) that the defendant's suppression of the fact induced the plaintiff to act or to refrain from acting; and (5) that the plaintiff suffered actual damage as a proximate result." *Slade, supra*, 747 So.2d at 323-324; *compare id. with DGB, LLC v. Hinds,* 55 So.3d 218, 231 (Ala. 2010) ("The elements of a claim of fraudulent suppression are: (1) a duty on the part of the defendant to disclose facts; (2) concealment or nondisclosure of material facts by the defendant; (3) inducement of the plaintiff to act; [and] (4) action by the plaintiff to his or her injury." (quotation marks and citations omitted)) and *Freightliner, supra,* 932 So.2d at 891 (same).

The initial problem with the removing defendants' argument in this regard is that even if this Court was to agree that Stauter made no false statement, this does not foreclose Mattox's suppression claim against the in-state defendant as the two causes of action are independent of one another, *cf. Boackle v. Bedwell Construction Co., Inc.,* 770 So.2d 1076, 1080 (Ala. 2000) ("The materials before us do not show either a valid claim for fraudulent suppression *or* a valid claim for fraudulent misrepresentation."

--------

must be reversed, and the cause remanded for the entry of a judgment consistent with this opinion.").

(emphasis added)), and there is no requirement under Alabama law, for purposes of a suppression claim, that there be a misrepresentation, or false representation; rather there need only be suppression of an existing material fact. *Compare Davis v. Sterne, Agee & Leach, Inc.*, 965 So.2d 1076, 1091 (Ala. 2007) ("'[T]he misrepresentation *or* suppression of the existing material fact must have led the plaintiff to act to his detriment in reasonable reliance thereon.'") *with Eskridge, supra* (on a claim of fraudulent misrepresentation there must be proof of a misrepresentation of a material fact) and *Slade, supra* (to make out a suppression claim, there must be proof of the suppression of a material fact). Moreover, it is clear that "knowledge of the falsity of the []representation is not an element of fraudulent suppression[.]" 965 So.2d at 1091 (citations omitted). Therefore, even if Stauter made no false representations, this Court can make no finding that this forecloses plaintiff from pursuing a claim of fraudulent suppression against Stauter.[39]

Although the foregoing should foreclose the necessity of addressing the removing defendants' "no false statement" argument,[40] the undersigned does observe that what the defendants desire this Court to do is cull through the facts established as

---

[39]     This is particularly the case where, as here, taking the facts in the light most favorable to the plaintiff, Stauter failed to disclose to Mattox the contents of his internal memorandum penned on August 31, 2009, and the conclusion that the "structure is a constructive total loss because the ACV Xactimate repair estimate exceeded the policy limit." It is certainly not beyond reason to conclude that had such facts been revealed to Mattox he would have chosen to repair his home, rather than have it completely torn down, and demanded the additional 5% debris removal coverage. After all, Stauter did tell Mattox on September 2, 2009, at 10:33 a.m. that "HE WOULD BE ENTITLED TO SOME BENEFIT IF HE INCURRED DMO, BUT THE AMOUNT WOULD DEPEND ON WHAT HE DID AS FAR AS DMO GOES[,]" some eleven minutes after the claims agent prepared State Farm's second estimate.

[40]     There can be no doubt, of course, that "[a] false statement is an essential element of fraud[,]" and that "'there can be no liability for fraud without proof that the defendant made an untrue statement.'" *Prestwood v. City of Andalusia,* 709 So.2d 1173, 1175 (Ala. 1997) (citations omitted).

of the date of removal of this action, to the exclusion of any facts which may be developed during the discovery of this action, and find as a matter of law, at this point in time, that Stauter made no false statement to Mattox. Indeed, what the removing defendants are asking of this Court is to make a "merits" decision on plaintiff's fraudulent misrepresentation claim when that is not the charge of this Court in the fraudulent joinder context. *Compare Crowe, supra,* 113 F.3d at 1542 ("In the remand context, the district court's authority to look into the ultimate merit of the plaintiff's claims must be limited to checking for obviously fraudulent or frivolous claims. Although we have said that district courts may look beyond the face of the complaint, we emphasize that the district court is to stop short of adjudicating the merits of cases that do not appear readily to be frivolous or fraudulent.") *with Pacheco de Perez, supra,* 139 F.3d at 1380-1381 ("In a fraudulent joinder inquiry, 'federal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law.'") and *Triggs, supra,* 154 F.3d at 1287 ("'If there is *even a possibility* that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court.' . . . The plaintiff need not have a winning case against the allegedly fraudulent defendant; he need only have a *possibility* of stating a valid cause of action in order for the joinder to be legitimate." (emphasis in original)). In other words, the removing defendants are not asking this Court to find that plaintiff cannot establish a fraudulent misrepresentation claim against Stauter because such a claim is not cognizable under Alabama law, as is the case with respect to negligent handling of insurance claims, *see, e.g., Kervin v. Southern Guaranty Ins. Co.,* 667 So.2d 704, 706 (Ala. 1995) ("[T]his Court has consistently refused to recognize a cause of action for the negligent handling of insurance claims[.]"), or because the claim stated is a point-of-

sale misrepresentation or suppression claim which cannot be brought against Stauter since he did not sell the policy to Mattox, *see, e.g., Lewis v. State Farm Fire & Cas. Co.,* 2011 WL 521617, *9-10 (S.D. Ala. Feb. 15, 2011), *report & recommendation adopted,* 2011 WL 855616 (S.D. Ala. Mar. 9, 2011); instead, the removing defendants—fully aware that Alabama recognizes a cause of action for "fraud or fraudulent suppression in the handling of an insurance claim . . . even in a setting where the insured alleges a bad-faith refusal to pay a claim[,]" *Slade, supra,* 747 So.2d at 320—are asking the Court to parse through the facts and make a merits decision that there was no false statement made by Stauter even though this is a determination consistently made by Alabama courts on summary judgment, or later in the proceedings, after the close of all discovery, *see, e.g., Prestwood, supra,* 709 So.2d at 1175 ("The city did not present substantial evidence that James Prestwood's statement-'title is good'—was a misrepresentation. . . . Not one witness **testifying at trial**, including the city's own experts, could testify that title to the property was not good." (emphasis supplied)); *Keller v. Security Federal Savings & Loan Ass'n,* 555 So.2d 151, 152, 154 & 155 (Ala. 1989) ("This appeal is from a **summary judgment** entered in favor of Security Federal Savings and Loan Association . . . and Vann Waldrop[.] . . . Count I asserted a fraud claim. Keller admitted that neither Waldrop nor anyone else at Security Federal ever made a false representation to him. . . . Keller's admission that Security Federal and Waldrop never told him anything untrue defeats his fraud claim." (emphasis supplied)), including, most importantly, the case cited by State Farm, *see George v. Associated Doctors Health & Life Ins. Co.,* 675 So.2d 860, 861 & 862 (Ala. 1996) ("The plaintiff . . . appeals from a **summary judgment** for the third-party defendant Associated Doctors Health and Life Insurance Company[.] . . . We hold that Mr. George has failed to overcome ***Associated Doctors' prima facie showing that there is no genuine issue of material fact***

*as to either fraud count [because he failed to show that any of the agent's statements/representations were false].*" (emphasis supplied)). The undersigned has consistently staked the position that it is improper in the fraudulent joinder context for this Court to make a merits decision regarding a claim asserted against an in-state defendant that is legally cognizable under Alabama law and that position will not be modified in this opinion. In other words, while Mattox may not have a winning case against Stauter for fraudulent misrepresentation—or, for that matter, fraudulent suppression—there is undeniably present the possibility that a state court would find that the complaint states a cause of action against Stauter. Accordingly, the removing defendants' argument in this regard should be rejected.

Mattox's fraud claims against Stauter are not obviously "frivolous or fraudulent," *Crowe*, 113 F.3d at 1542; instead they are serious and viable. Because there is a real possibility that Alabama law might impose liability on Stauter under the circumstances alleged in the second amended complaint, this Court cannot find that joinder of the resident defendant was fraudulent. Therefore, plaintiff's motion to remand (Doc. 9) should be **GRANTED** and this cause remanded to the Circuit Court of Baldwin County, Alabama.

## CONCLUSION

For the reasons set forth above, the undersigned concludes that the removing parties have failed to prove by clear and convincing evidence that Jeff Stauter was fraudulently joined. In consideration of this determination, Stauter's citizenship must be considered in applying the diversity provisions of 28 U.S.C. § 1332. Since it is undisputed that plaintiff Mattox and defendant Stauter are Alabama citizens, the presence of the non-diverse defendant precludes the exercise of diversity jurisdiction. Therefore, it is **RECOMMENDED** that plaintiff's motion to remand (Doc. 9) be

**GRANTED** and this action **REMANDED** to the Circuit Court of Baldwin County, Alabama from whence it came. As a result of the foregoing, defendant Jeff Stauter's motion to dismiss (Doc. 13) is due to be **DENIED**.

The instructions which follow the undersigned's signature contain important information  regarding objections to the report and recommendation of the Magistrate Judge.

DONE this the 15th day of August, 2012.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND
RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND
FINDINGS CONCERNING NEED FOR TRANSCRIPT**

l.      *Objection*.  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this court.  Failure to  do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  See 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982) (en banc).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days[41]  after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

> A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.      *Transcript (applicable Where Proceedings Tape Recorded)*.  Pursuant to 28 U.S.C. § 1915 and FED.R.CIV.P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

---

[41]      Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]" Fed.R.Civ.P. 72(b)(2).